## STATE *vs.* SAMUEL L. BURRIS.

1. STATUTES—ENACTMENT—ENROLLED ACT—CONSTITUTIONAL PROVISIONS.

Act Gen. Assem. March 31, 1903 (22 *Del. Laws, c.* 273, §§ 1-7; *Rev. Code* 1915, §§ 1020-1027), relating to the powers and duties of the Levy Court Commissioners of New Castle County, as to which the House Journal showed an entry, "Senate Amendment to House Bill No. 96 was concurred in and ordered that the Senate be informed thereof," but did not show that the vote on the amendment in the House was by yeas and nays, was not invalid under *Const. art.* 2, § 10, which, as subsequently amended, provides that each house shall keep a journal of its proceedings, and that the yeas and nays of the members on a question shall, at the desire of any member, be entered thereon and that no bill shall pass either house unless the final vote shall have been taken by yeas and nays, and the names of the members voting for and against it shall be entered on the journal, but, interpreted with reference to the amendment, was valid and constitutional under the enrolled act doctrine.

2. COUNTIES—COMMISSIONERS—CRIMINAL OFFENSE—INTENT.

Under Act Gen. Assem. March 31, 1903 (22 *Del. Laws, c.* 273, § 5; *Rev. Code* 1915, § 1025), making it unlawful for any commissioner of the Levy Court of New Castle County to vote for or consent to the doing of any work or the furnishing of any materials for the county where the cost in any particular case will probably exceed the sum of five hundred dollars, without publicly inviting sealed proposals and giving the contract to the lowest responsible bidder, there is no necessary element of intent, and, if a commissioner violated the statute, it was immaterial what his motive or intent was.

3. COUNTIES — COUNTY COMMISSIONERS—OFFENSES — CONSTRUCTION OF STATUTE.

Under such provision the Levy Court Commissioners, in ascertaining the probable cost of material in any particular case, must be held to have known whatever would reasonably have been known by them in the discharge of their duties by the exercise of fair and reasonable diligence, and must be reasonably diligent to ascertain what would be the probable cost of the material necessary to do the work.

4. COUNTIES—COUNTY COMMISSIONERS—OFFENSES—CONSTRUCTION OF STATUTE—ANY PARTICULAR CASE.

Under such provision the words "any particular case" mean that, if at the time any work for the county is contemplated or begun the Levy Court Commissioners know, or by the exercise of reasonable diligence could have known that the cost would exceed five hundred dollars, it is their duty to invite bids for the necessary labor and material, and, even though it did not then reasonably appear that the cost would exceed five hundred dollars, yet if after the work was begun they knew or could have known that the cost of completion would exceed that amount, it was their duty to ask for bids therefor, provided the work had not so far progressed that its cessation to receive bids and award a contract, would seriously affect the rights of the public.

5. CRIMINAL LAW—EVIDENCE—PRESUMPTION OF INNOCENCE.

In a criminal case the defendant is presumed to be innocent until his guilt is proved beyond a reasonable doubt.

6. CRIMINAL LAW—WEIGHT OF EVIDENCE—"REASONABLE DOUBT."

A "reasonable doubt" does not mean a fanciful, speculative, or mere possible doubt, but rather a real, substantial doubt, such as fair, impartial, and conscientious men would feel constrained to entertain after carefully considering all the evidence.

(*November* 10, 1915.)

PENNEWILL, C. J., and HEISEL, J., sitting.

· *Josiah O. Wolcott*, Attorney General, and *Armon D. Chaytor, Jr.*, Deputy Attorney General, for the state.

*David J. Reinhardt* and *Philip L. Garrett* for the accused.

Court of General Sessions, New Castle County, November Term, 1915.

INDICTMENT, No. 109, September Term, 1915.

Samuel L. Burris, a Commissioner of the Levy Court of New Castle County, was indicted for the violation of *Section* 5, *Chapter* 273, *Volume* 22, *Laws of Delaware* 574, being *Section* 1025, *Revised Code* of 1915

On motion to quash the indictment for the reason set forth in the opinion of the court. Refused. The case was subsequently tried before a jury.

PENNEWILL, C. J., delivering the opinion of the court:

[1] This is a motion to quash the indictment in the above case, which charges a violation of the provisions of *Section* 5, *Chapter* 273, *Volume* 22, *Laws of Delaware*. The act was approved March 31, 1913.

It is contended by the defendant that it does not affirmatively appear from the entries in the journals of the Senate and House of Representatives that said act was passed in accordance with the provisions of *Section* 10, *Article* 2, of the *Constitution* of the state, in that on the final vote in the House the names of the members voting for and against the said act were not entered on the journal.

The constitutional provision referred to is in the following language:

"Section 10. Each house shall keep a journal of its proceedings and publish the same immediately after every session, except such parts as may require secrecy * * * and the yeas and nays of the members on any question shall, at the desire of any member, be entered on the journal. No bill or joint resolution, except in relation to adjournment, shall pass either house unless the final vote shall have been taken by yeas and nays [and the names of the members voting for and against the same shall be entered on the journal], nor without the concurrence of a majority of all the members elected to each house."

It is claimed by the defendant that *Ross v. Allmond*, 1 *Boyce*, 445, 76 *Atl.* 370, is decisive of the present case.

The state contends that the present case is distinguishable from the *Ross-Allmond case*.

It is admitted that the bill now under consideration was constitutionally passed by the House, and sent to the Senate for concurrence; that *Section* 3 of the bill was amended in the Senate, constitutionally passed by that body, as amended, and returned to the House.

The House Journal then contains the following entry:

"Senate Amendment to House Bill No. 96 was concurred in and ordered that the Senate be informed thereof."

It appears, therefore, from the journals, that the original bill was regularly and constitutionally passed by each house, and that the amendment offered in the Senate was adopted in that body by a yea and nay vote. The only objection urged against the validity of the act is, that the journal of the House does not show that the vote on the amendment in that body was by yeas and nays.

The facts as disclosed by the journals are very different from those in the *Ross case*. In that case the journals did not show that the final vote on the bill was taken by yeas and nays.

Upon the question whether the vote taken in the House on the adoption of the Senate amendment was or was not the "final vote" on the bill within the meaning of the Constitution the court express no opinion.

But assuming that the vote on the amendment was a "final vote" within the meaning of the Constitution, we think the constitutionality of the act can be sustained on a broader ground, which, for obvious reasons, was not mentioned in the argument.

When the *Ross-Allmond case* was decided, this state had not by any judicial decision, indicated whether the journal entry doctrine or the enrolled act doctrine should be recognized. While very many of the other states had so indicated, no Delaware court had expressed any opinion on the subject. It was a new question in this state. Therefore, the judges sitting in the *Ross-Allmond case*, in preparing their opinions, endeavored to ascertain which of the two doctrines the majority of the states had upheld. The judges who gave the majority opinion were convinced that a decided majority of our sister states had upheld and enforced the journal entry doctrine, and that was one reason, and a very potent one, for their decision. The judges who gave the minority decision believed that the preponderance of authority was in favor of the enrolled act doctrine. Under such conditions the two opinions were prepared, and were based, of course, upon what the respective judges believed to be reason and authority.

Since the decision in the *Ross-Allmond case* the people of the state have solemnly declared which of said doctrines sound policy requires should be followed. This was done by a constitutional amendment which provides, in effect, that the enrolled act doctrine should be recognized in this state.

It is admitted by the defendant that if said amendment had been adopted before the passage and approval of the act in question no objection could be made to the constitutionality of the act.

We do not mean to say that the amendment is retroactive in the sense that it applies to acts of the legislature passed before its adoption. But we do say that it has, and should have, much influence with the court in deciding whether an act of the legislature passed before the amendment, was, or was not, constitutionally passed.

We have a rule and guide now that we did not have before, and it is impossible to escape altogether its force and effect in considering such a question.

In the majority opinion delivered in the *Ross-Allmond case* it was said:

"But, after all, it is not for this court to decide whether the English or American doctrine is the better and safer one to adopt, but rather, which

one we are compelled to recognize under the provisions of our Constitution. If the people of the state, on grounds of public policy, or for any other reason, should think the enrolled act doctrine the better one, it is for them by appropriate means to so change the Constitution as to ensure its recognition. It cannot be done by judicial construction."

The majority of the court then believed the journal entry doctrine to be supported by reason as well as by the preponderance of authority. But now, in face of the constitutional amendment, cases from other states upholding that doctrine, however numerous, are of no avail; and any reason given before its adoption in support of such doctrine cannot be forceful or persuasive when the people of the state have said that a different rule should prevail. We regard it not only as an amendment or alteration of the Constitution, but as a rule of evidence and interpretation in ascertaining the will of the people as expressed in the Constitution.

If the amendment now in force had been adopted before the decision in the *Ross-Allmond case*, but after the enactment and approval of the act there in question, it is very certain the decision would have been different, and in all probability the question would not have been argued.

In deference to the ascertained will of the people the enrolled act doctrine would have been followed in construing the constitutional provision, no matter what other states had done, or what the opinion of the court would be in the absence of such amendment.

Such is exactly the situation that now exists, and we hold that the act in question is valid and constitutional under the enrolled act doctrine.

The motion to quash is refused.

The case came on for trial before a jury April 5, 1916.

PENNEWILL, C. J., and CONRAD and HEISEL, J.J., sitting.

The indictment charges that the offense alleged therein was committed in the month of March, A. D. 1914. It contains eight counts and each charges a violation of said statute.

The facts and the law of the case are sufficiently stated in the charge to the jury.

PENNEWILL, C. J., charging the jury:

The defendant is charged with the violation of a statute of this state which provides that:

"It shall be unlawful for any Commissioner of the Levy Court of New Castle County to vote for or consent to the doing of any work and labor for New Castle County or said Levy Court, or to vote for or consent to the furnishing, having or using by or for account of said county or Levy Court of any merchandise, tools, implements, machinery or materials whatsoever, where the cost in any particular case will probably exceed the sum of five hundred dollars, whether said work, labor, merchandise, tools, implements, machinery or materials shall be required for new work or for repairs upon old work, unless and until the said Levy Court shall publicly invite sealed proposals for the doing of such work and the furnishing of such merchandise, tools, implements, machinery and materials, and give the contract resulting therefrom and therefor to the lowest responsible bidder or bidders." *Revised Code* of 1915, § 1025.

There are numerous counts in the indictment but each of them charges, in somewhat different or varying language, substantially the same offense. It is not necessary, therefore, that the court shall refer specifically to the several counts.

The particular offense charged in this case is, that the defendant in the year 1914, being at the time a Levy Court Commissioner for the First Levy Court District of New Castle County, did unlawfully consent to the furnishing for account of New Castle County aforesaid, certain materials for repairs of Washington Street bridge, in the City of Wilmington—

"said repairs consisting in the repairing of the sills and flooring of said bridge; that the cost of said materials would then and there probably exceed five hundred dollars, and that the said furnishing of said material was for one well defined and ascertained piece of work, and as such was a particular case within the meaning of said statute; that said material, to the furnishing of which the said defendant consented, was furnished for account of said county and the cost of said materials furnished as aforesaid exceeded the sum of five hundred dollars, and at no time did the said Levy Court publicly invite sealed proposals for said materials and give a contract resulting therefrom and therefor to the lowest bidder or bidders as by law provided."

It is undisputed that bids or proposals for the furnishing of said materials were not invited.

The important question for the jury to determine, is as you have doubtless observed from the specific charge against the defendant, a narrow one.

The court decline to charge you as requested by the first, second, third, fourth and fifth prayers, of the defendant.

[2]   The state does not claim that the defendant violated said statute corruptly or even intentionally, but insists that intent is not material.

We say to you that in this case there is no necessary element of intent.   If the defendant consented to the furnishing of the materials contrary to the provisions of the statute, it is immaterial what his motive or intent may have been.

It is hardly necessary for the court to tell you what the statute in question was designed to accomplish, for you know as well as the court that its purpose was to prevent extravagance and waste of county moneys in the construction and repair of public works.   In particular it was intended to prevent favoritism, collusion and wrongdoing in the awarding of certain contracts for the county.

In any particular case in which it is contemplated to purchase materials, the probable cost of which would be in excess of five hundred dollars, it is the duty of the Levy Court Commissioners purchasing such materials to comply with the statute by inviting bids, and it is unlawful to purchase material in such a case unless it is furnished upon contract awarded after bids have been submitted.

[3]   In ascertaining the probable cost of material in any particular case, the Levy Court Commissioners must be held to have known whatever would reasonably have been known by them in the discharge of their duties, by the exercise of fair, honest and reasonable diligence;  and it is also their duty to be reasonably diligent to ascertain what would be the probable cost of the material necessary to do the work.

[4]   In order to know whether the statute has been violated or not, it is necessary to understand what is meant by the words "any particular case."

We understand those words to mean, that if at the time any work for the county is contemplated or begun the Levy Court Commissioners know, or by the exercise of reasonable diligence could have known, that the cost would exceed five hundred dol-

lars, it is their duty to invite bids for the necessary labor and materials. And even though at such time it does not reasonably appear that the cost would exceed five hundred dollars, nevertheless, if at any time after the work is begun the commissioners know or by the exercise of reasonable diligence could have known that the cost of completing the same would exceed the sum of five hundred dollars, it is the duty of said commissioners to ask for bids therefor, provided the work has not progressed so far or is of such character that its cessation for the purpose of receiving bids and awarding the contract thereunder would seriously affect the rights of the public in the use of the structure that is being repaired.

Such a construction of the statute is fair and reasonable both to the commissioners and the people of the county, for it has due regard to the duties of the former as well as to the rights of the latter.

If then the jury are satisfied from the evidence beyond a reasonable doubt that the defendant, as a Levy Court Commissioner of this county, consented in a particular case, as we have defined it, to the furnishing of lumber for the repair of the sills and flooring of Washington Street bridge in the year 1914, and at the time he consented to the furnishing of said lumber he knew, or by the exercise of reasonable diligence could have known, that the probable cost of the lumber for the contemplated and proposed repairs would exceed five hundred dollars, and did exceed that amount, and that he consented without bids for said lumber being invited, your verdict should be guilty.

But if the jury are not satisfied from the evidence beyond a reasonable doubt that the lumber furnished for repairing the sills and flooring of Washington Street bridge, with the consent of the defendant, amounted to the sum of five hundred dollars, or that it was furnished in a particular case within the meaning of the statute, as we have defined it, or, if the jury believe from the evidence that the defendant did not know, and could not by the exercise of reasonable diligence have ascertained, that the cost of the lumber necessary to repair the sills and flooring of Washington Street bridge would exceed the sum of five hundred dollars, then your verdict should be not guilty.

[5, 6]  In every criminal case, as you know, the defendant is presumed to be innocent, and such presumption continues until his guilt is proved beyond a reasonable doubt.  If therefore, after carefully considering all the testimony, you entertain a reasonable doubt of the defendant's guilt, you should render a verdict of not guilty.  But by a reasonable doubt the law does not mean a fanciful, speculative or mere possible doubt, but rather a real, substantial doubt, and such as fair, impartial and conscientious men would feel constrained to entertain after carefully considering all the evidence.

Verdict, not guilty.