## IN RE SCHOOL CODE OF 1919.

(Opinion of the Chancellor and Judges upon the request of the Governor.)

1: SCHOOLS AND SCHOOL DISTRICTS—NECESSITY FOR SCHOOL CODE TO BE GENERAL.

A School Code, as 30 *Del. Laws*, c. 157, passed pursuant to *Const. art.* 10, § 1, to be constitutional must be general through provision for free public schools for all the children of the state.

2. SCHOOLS AND SCHOOL DISTRICTS—VALIDITY OF GENERAL LAW FOR ESTABLISHMENT OF UNIFORM SCHOOL SYSTEM.

A general law providing for the establishment and maintenance of a system, uniform or otherwise, of free public schools, and made applicable to every school district, town, or city, incorporated or otherwise, without the consent and even against the will of such district, town, or city, if properly enacted would be a valid exercise of the mandate of *Const. art.* 10, § 1, and would overrule provisions of separate acts relating to school districts, incorporated or unincorporated, and to incorporated boards of education which are mere agencies of the state in executing the governmental function of providing free schools.

3. STATUTES—CREATION OF SCHOOL DISTRICTS AND BOARDS OF EDUCATION NOT REQUIRING TWO-THIRDS VOTE OF LEGISLATURE.

School districts created by special acts of the Legislature, and districts and boards of education created by the School Code (30 *Del. Laws*, c. 157), adopted pursuant to *Const. art.* 10, § 1, *held* not acts of incorporation, within *Const. art.* 9, § 1, requiring a two-thirds vote of the Legislature to enact any general incorporation law or any special act of incorporation, being neither private nor municipal corporations, but public quasi corporations.

4.  CONSTITUTIONAL LAW—SCHOOL CODE SUBJECT TO ACCEPTANCE BY
    DISTRICT NOT A DELEGATION OF LEGISLATIVE POWER.

The School Code (30 *Del. Laws, c.* 157), adopted pursuant to *Const. art.*
10, § 1, *held* not unconstitutional as a delegation of legislative power to school
districts, the power given districts to accept its provisions being an exercise
of power by agencies of the state, and not a delegation of legislative power,
*section* 121 merely granting option to certain special school districts to accept
the law, already in force and effective as to all districts.

5.  TAXATION—SCHOOL CODE NOT INVALID AS NECESSITATING TAXES NOT
    UNIFORM.

The School Code (30 *Del. Laws, c.* 157), enacted pursuant to *Const. art.*
10, § 1, *held* not invalid as requiring the assessment of capitation taxes not
uniform in the county in which levied, and property taxes not uniform in
the territorial limits of the authority levying them; the taxes being uniform
in each school district, which complies with the constitutional requirement
of uniformity.

6.  CONSTITUTIONAL LAW—VALIDITY OF SCHOOL CODE PROVIDING FOR
    TAXES BASED ON ASSESSMENT WITHOUT RIGHT OF APPEAL.

The School Code (30 *Del. Laws, c.* 157), enacted pursuant to *Const. art·*
10, § 1, *held* not invalid because providing for the collection of school taxes
based on a county assessment previously made, and from which no right of
appeal is given; any one taxable having had opportunity to make complaint
to the assessor, Board of Assessment and Levy Court, when the assess-
ment was made.

7.  CONSTITUTIONAL LAW—SCHOOL CODE NOT DIVESTING VESTED RIGHTS
    OR IMPAIRING OBLIGATION OF CONTRACTS.

The School Code (30 *Del. Laws, c.* 157), enacted pursuant to *Const. art·*
10, § 1, *held* not invalid as divesting vested rights or impairing the obligation
of contracts within the federal Constitution, as it takes from the owner of
school bonds no security he enjoyed before its passage.

8.  STATUTES—SCHOOL CODE NOT INVALID AS TREATING OF SUBJECT NOT
    IN TITLE.

The School Code (30 *Del. Laws, c.* 157), enacted pursuant to *Const. art.*
10, § 1, though dealing in a general way with the care, attention, and treat-
ment of dependent children brought into the state, *held* not invalid as treating
of two "subjects" within the meaning of the Constitution, one of which is
different from the subject of free public schools embraced in the title.

9.  COURTS—OBLIGATION OF CHANCELLOR AND LAW JUDGES IN INFORMING
    GOVERNOR AS TO CONSTITUTIONALITY OF STATUTE.

The only thing the chancellor and law judges are called upon to do
when replying to an inquiry of the Governor as to the constitutionality of
a statute is to express to him their opinion on the constitutionality of the
statute.

*(September 17, 1919.)*


*Robert G. Harman, Levin Irving Handy, John W. Huxley, Jr.*
City Solicitor, all of Wilmington, and *James H. Hughes, of Dover*
for opponents.

*Henry Ridgely,* of Dover, *William S. Hilles,* of Wilmington and *David J. Reinhardt,* Attorney-General (*Caleb E. Burchenal,* of Wilmington, and *John B. Hutton,* ·of Dover, .filed briefs), for· the Code.

Communication from the Governor requesting the opinions of the Chancellor and Judges touching the constitutionality of the new School Code, recently enacted by the Legislature.

The Legislature, at its regular biennial ·session in 1919, enacted *Chapter* 157, *Volume* 30, *Laws of Delaware,* 352, known as the School Code. A controversy arising as to the validity of the act, the Governor, under *Rev. Code* 1915, § 402; requested the opinions of the Chancellor and Judges touching its constitutionality. The said section provides:

"The Chancellor and Judges, whenever the Governor shall require it for public information or to enable him to discharge the duties of his office with fidelity, shall give him their opinions in writing touching the proper construction of any provision in the Constitution of this state or of the United States, or the constitutionality of any law enacted by the Legislature of this state."

Omitting the formal parts the Governor did on the third day of September, A. D. 1919, present the following communication to the Chancellor and Judges.

"The General Assembly at its recent session passed on Act entitled 'An Act to repeal *Chapter* 71 of the *Revised Code* of the State of Delaware entitled "Free Schools" and to provide a new chapter 71 entitled "Public Schools." ' On April second, 1919, the said Act received the official approval of the Governor, and the administration, according to the provisions made, began.

"There has now developed a controversy as to the validity of said Act, which is seriously affecting the interests of education. In view of this popular interpretation and the controversy arising therefrom, it has been decided by those officially interested, that the interests of the State can well be served by an expression of opinion from the Judges relative to the constitutionality of the Act.

"Therefore, at the request of those officially responsible for the administration of our Public Schools, I am submitting said Act to you for your review and ask that you render your opinion relative to its validity and constitutionality.

"It is, I am sure, under the serious circumstances now existing, needless for me to suggest that your deliberations be made at as early date as possible."

The Chancellor and Judges replied, as follows:

"The Chancellor **and Law** Judges of the State have received your communication, requesting **their** opinion respecting the constitutionality of an

Act of the Legislature, passed at the last session, and commonly known as the 'School Code.'

"In view of the great and general interest felt in the question you have submitted, we think our opinion should not be based upon a hasty and imperfect consideration of the matter, but should be reached after a careful examination of the statute and the law applicable to the question raised. To that end we have concluded that at least a week's time is essential, and that an opportunity should be given to any attorneys who may desire to argue before us either side of the question.

"We will meet again in the County Court Room, at Dover, on Wednesday, September 10th, 1919, at eleven o'clock, a. m., and will be pleased to hear and consider any arguments that may then be submitted either orally or in writing.

"The Chancellor and Law Judges would much prefer to determine the question in a regular judicial proceeding, but they realize that such a proceeding would involve more delay than would be justified, in view of the necessity for a reasonably early decision.

"The importance of the question does, however, require careful consideration, and the procedure we propose to follow seems to us to be the best that can be adopted under the circumstances."

At the request of Mr. Harman, one of the attorneys for the opponents to the act, the hearing was subsequently postponed to September twelfth.

The several grounds of attack made upon the act at the hearing are stated in the opinion.

Article 10 of the State Constitution of 1897, provides that—

"The General Assembly shall provide for the establishment and maintenance of a general and efficient system of free public schools."

Article 9 provides that—

"No corporation shall hereafter be created, amended, renewed or revived by special act, but only by or under General Law, nor shall any existing corporate charter be amended, renewed or revived by special act, but only by or under general law; but the foregoing provisions shall not apply to municipal corporations, banks or corporations for charitable, penal reformatory, or educational purposes, sustained in whole or in part by the State. * * * No general incorporation law, nor any special act of incorporation, shall be enacted without the concurrence of two-thirds of all the members elected to each House of the General Assembly."

At the time of the adoption of the Constitution, Wilmington, Dover, Georgetown, and practically every other town in the state, had a special legislative act dealing with the subject of public education therein. Each of these communities was clothed with authority in matters of public education under such special

acts, enacted at various times, in the form and nature of corporate acts. One of the main objections urged against the validity of the School Code was that these special acts had been enacted by a two-thirds vote of the members of the General Assembly, as required for the creation of a corporation by special act, whereas the School Code had been passed by a majority vote.

On the other hand, it was contended that the public schools, under these special acts, were within the provisions of *article* 10 of the Constitution, providing for a general system of free public schools, and that they were wholly outside of *article* 9 of the Constitution, in relation to corporations. And that the School Code, embracing all the public schools of the state, was properly enacted by a majority vote of the General Assembly.

The following opinion was transmitted to the Governor:

Hon. John G. Townsend, Governor—Sir:

In execution of the purpose indicated in our letter to you of September third, 1919, we sat in Dover on September twelfth to give to any attorney the opportunity to be heard and heard arguments for and against the constitutionality of the recent legislation called the School Code made by several of the able lawyers of the State, and have carefully considered the subject matter laid before us, and herein submit our views and conclusion.

The act in question was passed pursuant to the mandate contained in *section* 1 *of article* 10 of the Constitution.

[1, 2] To be constitutional it must have been general. To be general it must provide for free public schools for all of the children of the state. A general law providing for the establishment and maintenance of a system, uniform or otherwise, of free public schools and made applicable to every school district, town or city, incorporated or otherwise, without the consent and even against the will of such school district, town or city, would if properly enacted be a valid exercise of this constitutional mandate. Such an act would overrule and annul the provisions relating to free public schools contained in acts relating to school districts, incorporated and unincorporated, and to incorporated

Boards of Education.   Such bodies whether incorporated or not
are mere agencies of the State for executing the governmental
function of providing free schools.    No contractual relations
arose either from the enactment of their charters and the ac-
ceptance thereof and action thereunder or otherwise.    Therefore,
the State in the exercise of this governmental function can at
any time choose new agencies to carry out this public purpose,
whether such agents be bodies corporate created before or after
the adoption of the Constitution of 1897.   Such we believe are
general principles applicable to the Act under consideration.

The validity of said Act has been attacked on the following
grounds, viz.:

1.   Because it did not receive the concurrence of two-thirds
of all the members elected to each House of the General Assembly.

2.   Because it is a delegation of legislative power to  the
school districts of the state.

3.   Because it requires the assessment and collection of
capitation taxes that will not be uniform in the county in which
they are to be levied, and property taxes that will not be uniform
in the territorial limits of the authority levying the same.

4.   Because it impairs the obligation of contracts by chang-
ing, lessening and taking away the security of the holders  of
school bonds without their consent.

5.   Because it requires the collection of taxes based upon an
assessment from which the taxables are given no right of appeal
or opportunity to correct mistakes, thereby depriving them of
their property without due process of law.

6.   Because it treats of two subjects, only one of which is
expressed in the title.

There may have been one or two other specific objections made,
but they were covered in the discussion of the grounds stated.

Our conclusions are these:

[3]   1.   School districts in this state, created by special acts
of the Legislature, and the districts and boards created by the
act in question, are not acts of incorporation within the meaning
of *section* 1, *art.* 9, of the Constitution.   They are neither private
nor municipal corporations, but may be regarded as public quasi

corporations. *Coyle v. McIntire*, 7 *Houst.* 44, 89, 30 *Atl.* 728, 40 *Am. St. Rep.* 109. They are not separate, independent or permanent corporations, but integral parts of the general educational system of the State, and created for the purpose of perfecting such system and making the administration of the school laws more convenient and effective. The General Assembly is required by *article* 10 to provide for the establishment and maintenance of a general and efficient system of public schools, but there is no requirement that legislation thereunder shall have the concurrence of two-thirds of each House. It is entirely competent for the Legislature, in providing for such a system of public schools, to create school districts with certain corporate powers, but they are parts of the system and not such independent educational corporations as are contemplated by *article* 9. They are agencies of the State government, created for the purpose of aiding in carrying out the requirements of the Constitution respecting the establishment and maintenance of a public school system, and may be altered or abolished by the Legislature at any time. We must, therefore, assume that any legislative act that constitutes a part of the general system of public schools, including acts incorporating school districts, and boards of education, requires only the concurrence of a majority of all the members elected to each House. Said *article* 9 may embrace certain educational institutions, but it can have nothing to do with the establishment and maintenance of a general system of public schools fully provided for and made mandatory on the Legislature by *article* 10 of the Constitution, which is independent and complete in itself.

[4]    2. The act in question is not a delegation of legislative power to any school districts. Such districts being parts of the State government, created by the Legislature for educational, or public school purposes, the power given to them by the Code to accept its provisions, is an exercise of power by agencies of the state and not a delegation of legislative power within the meaning of the case of *Rice v. Foster*, 4 *Har.* 479, relied upon by the contestants. The power given by *section* 121 to certain special school districts to accept the Code is not a submission of the right to determine whether it shall be a law, but the granting of

an option to accept the law already in force and effective as to all districts. And that is the test recognized by all the authorities. If the existence of the law depends upon the vote of the people or the will of one man even, it is an unconstitutional delegation of legislative power; but if the law is complete in and of itself, the fact that it provides for an acceptance of any of its provisions by certain state agencies does not make it a delegation of legislative power and, therefore, invalid. This principle is applicable to the act under consideration. To hold otherwise would overlook the important element of the act hereinbefore indicated, viz.: that it establishes by sweeping general provisions a new general system of government of all of the free schools of the state, whether it be accepted or not by any one, or all, or none, of the school districts, school committees, or boards of education; and that it stands as the law relating to such schools independent of such acceptance, rejection or failure to accept.

There can be no doubt that the School Code was in force and operation before an acceptance of its provisions by any district. State and county boards of education were created by the act and clothed with certain powers and duties co-extensive with the state or county and operative from June thirtieth of the present year whether its provisions were accepted or not. In a sense it revolutionized the public school system of the State, and its existence required the approval of no one.

[5] 3. The act is not invalid because the taxes assessed and collected thereunder would not be uniform. The Constitution provides that the capitation tax shall be uniform throughout the county, and requires that such tax shall not be less than three dollars, nor more than six dollars annually. We are unable to see that the requirement of the statute affects in any wise the uniformity of the capitation tax. It may be uniform so far as anything in the Code is concerned. The Constitution (*article* 8, § 1) also provides that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," and it is contended that property taxes could not, under the act, be uniform within the territorial limits of the authority levying the same—which means the county.

But we think the words "within the territorial limits levying the same," mean the school district in which the taxes are to be used; and that the Levy Court is, under the statutory provision, merely the agent, or machinery, through which the taxes are actually levied and collected. The Levy Court has no discretion in the matter at all, the duty is mandatory and must be performed for the district that furnishes the budget. The taxes must, of course, be unifrom in the school district, and that in our opinion would be a compliance with the constitutional requirement.

[6] 4. The act is not invalid because it provides for the collection of taxes based upon a county assessment previously made, and from which no right of appeal is given in the Act. The assessment upon which the school taxes are based was made for county purposes, for county taxes, and under the law any taxable has an opportunity to make complaint to the Assessor, Board of Assessment, and Levy Court for the remedying of any wrongs, or the correction of any errors in the assessment. If the same assessment is used as the basis for school taxes, there can be no more reason for another opportunity for complaint and correction than there would be before the levying of another county tax based on the same assessment. The general assessment continues for four years, subject to annual revision, and. it is not essential that more than one right of appeal. or complaint, should be given no matter what may be the nature of the tax: The important thing is the right and opportunity to be heard as to the assessment.

[7] 5. The act does not divest vested rights or impair the obligation of contracts within the meaning of the Federal Constitution. No security is taken from the owner of school bonds that he held or enjoyed before the passage of the Code. The property of the district which constituted his security when the bonds were issued remains the same, and his right to enforce the collection of principal or interest when due may be enforced by appropriate action in the courts of the State. The new districts created under the Code expressly assume all the obligations of the old, and the only change that would affect the bondholder at all would be in the remedy for the collection of his debt. There

could be no deprivation or lessening of his contractual rights, the obligations would remain unimpaired.

[8]   6.   The Act does not treat of two subjects within the meaning of the Constitution.  It does treat in a general way of the care, training and education of dependent children brought into this State, and while this is a subject that may seem to be not closely related to the subject of free public schools embraced in the title, we do not think the one subject is so incongruous or foreign to the other as to make the Act invalid.  In no law, perhaps, could the training and education of such children be more appropriately treated of than in an Act providing for a system of free public schools for the State.

[9]   It may not be necessary to state the limit of our duty, or power, in replying to your communication, but lest there may be some persons who have a mistaken notion of our duty we will say, that the only thing we are called upon to do, and the only thing we can properly do under the law, is to express to your our opinion upon the constitutionality of the School Code.

In conclusion we say, that after the most thorough and careful examination we have been able to give your question in the time we thought was proper under the circumstances, we are of the opinion that the law known as the School Code is constitutional and valid.

Yours respectfully,

CHARLES M. CURTIS, Ch.
JAMES PENNEWILL, C. J.
WILLIAM H. BOYCE, J.
HENRY C. CONRAD, J.
HERBERT L. RICE, J.
T. BAYARD HEISEL, J.