**OPINION OF THE JUSTICES of the Su-
preme Court in. Response to Questions
Propounded by the Governor Upon the Con-
stitutionality of 56 Laws, Ch. 292.**

Supreme Court of Delaware.

July 23, 1968.

To His Excellency Charles L. Terry, Jr.
Governor of Delaware:

Reference is made to your letter of June 3, 1968, addressed to the Chief Justice, requesting the opinions of the Justices of the Supreme Court upon five questions concerning the constitutionality of House Bill 438 with House Amendment 1 (56 Laws, Ch. 292), being an Act to provide for the reorganization of the school districts of the State. The five questions propounded by you will be quoted seriatim hereafter, and immediately followed by the answer to the question.

Because of the nature of the questions and the far-reaching effect of the answers to them, the Justices were of the opinion

that it was desirable to formulate answers only after full briefing and oral argument by counsel appointed for the purpose.

Accordingly, with your approval, the Justices requested and obtained the assistance of C. J. Killoran, Esquire; Andrew G. T. Moore, II, Esquire, and Charles S. Crompton, Jr., Esquire, of the Bar of New Castle County. These gentlemen aligned themselves on opposite sides of the questions, and ably and forcefully presented their respective sides. We acknowledge our debt to them for their indispensable assistance.

We turn now to the questions to which you desire answers.

*Question No. 1*

Does House Bill 438 with House Amendment 1, violate Article 1, Section 7 of the Constitution of the State of Delaware for the reason that it provides in Section 1006 thereof that indebtedness of component school districts comprising a reorganized school district be assumed by the reorganized school district without submission of the question of reorganization or the question of the assumption of such debt to the qualified voters of the component school districts?

■ Article I, § 7 of the Delaware Constitution, Del.C.Ann., provides that no person shall be deprived of property except "by the law of the land". This section of our Constitution is held to have substantially the same meaning as the due process clauses of the Fifth and Fourteenth Amendments to the Federal Constitution. Ajax Distributors, Inc. v. Springer, 26 Del.Ch. 101, 22 A.2d 838.

By § 1006 of the Act before us, it is provided that a reorganized school district (resulting from a consolidation of former districts accomplished under §§ 1004 and 1005) shall be vested with all real and personal property of the component districts, and all indebtedness and obligations of the component districts shall become the indebtedness and obligations of the reorganized district. § 1006 further provides that all bonds of the component districts shall become the common obligation of all of the residents of the reorganized district, and shall be paid off by means of a common tax levied uniformly throughout the reorganized school district.

This section of the Act is said by the opponents to be unconstitutional because it will impose an additional burden of debt and tax liability upon the residents of the component districts without adequate safeguards of notice, hearing, vote or appeal privileges being afforded to them, by delegating the power to impose taxes to an appointive agency, the State Board of Education.

■ The General Assembly, by Article X, § 1 of the Constitution, is directed to provide for the establishment of a general system of free public schools for the State. In following the mandate thus imposed upon it, the General Assembly may, in its wisdom, use any device appropriate to the end as long as the scheme adopted is of general application throughout the State. In so doing, it may abolish existing agencies and choose new agencies and means to accomplish the desired end. The prior existence of school districts, or of existing statutes, does not restrain the General Assembly in the exercise of that power. In re School Code of 1919, 7 Boyce 406, 108 A. 39.

■ Nor is there any contractual relationship existing between local school boards, residents of a school district or localities which must necessarily be preserved under the Federal Constitution. The General Assembly, in exercising its broad powers to create and abolish school districts, and to establish a general education system, gives rise to no contractual relationship which the Federal Constitution will require to be protected. Attorney General of State of Michigan ex rel. Kies v. Lowrey, 199 U.S. 233, 26 S.Ct. 27, 50 L.Ed. 167.

■ Thus, it is clear, the pattern of laws heretofore existing in this State establishing a public school system are not binding on the General Assembly. It may change them freely in its wisdom. The fact that, heretofore, no consolidating of districts or imposition of taxes could be made without an affirmative vote of the residents of the particular district, does not mean that ever thereafter the General Assembly is bound to preserve that practice. The preservation or abolition of provisions for referenda is a matter of policy left to the discretion of the General Assembly.

The opponents to the Act, however, argue further that the General Assembly has improperly delegated to the State Board of Education, an appointed body, the power of taxation. The argument is based on § 1006(b) which requires the imposition of a common tax levied uniformly throughout the reorganized school district to pay off all the bonds of the component districts which, by the same section, are made the common obligation of the reorganized school district.

The opponents concede, as indeed they must, that the General Assembly, by act, could in terms have imposed the common tax, but it is argued that this has not been done, but that an unrestricted taxing power has been delegated to an appointive board.

■ In our opinion, however, the common tax to be levied in the reorganized school district has in fact, if not in terms, been imposed by the General Assembly and not by the State Board of Education. This conclusion is forced by reason of the fact that upon reorganization of school districts, the amount required to pay the bonds of the component is known to a certainty. Consequently, § 1006(b) amounts to a direction by the General Assembly to the State Board of Education to implement its levy of a tax in that amount.

■ The State Board of Education is nothing more than an agent of the General Assembly for this purpose, performing an administrative function. The tax, itself, is imposed by the General Assembly, the amount to be ascertained by the fact of consolidation. There is nothing inherently unconstitutional in delegating to an appointive board the fact-finding function upon which a tax levy previously formulated by the General Assembly is actually based. Cf. Mayor and Council of Wilmington v. State, 5 Terry 332, 57 A.2d 70.

The answer to Question No. 1 is in the negative.

*Question No. 2*

Would House Bill 438 with House Amendment 1, as applied to component school districts which were consolidated subsequent to April 25, 1962 the qualified voters of which had voted that the bonds of the then consolidating districts would remain obligations of the resident of the respective school districts violate Article 1, Section 7 of the Constitution of the State of Delaware?

■ We think our answer to Question No. 1 is controlling on Question No. 2. Since the General Assembly has broad powers of change with respect to the public school system, we see no reason why it could not change the result of a prior election. Indeed, this will be done in the cases of districts which heretofore have voted against consolidation.

In this connection, we have considered the cases opponents so capably urge upon us in support of their positions: Hazzard v. Alexander, 6 W.W.Harr. 212, 173 A. 517; Keller v. Wilson & Co., Inc., 21 Del. Ch. 391, 190 A. 115; Wilmington Trust Co. v. Copeland, 33 Del.Ch. 399, 94 A.2d 703. None of these cases is in point and, in our opinion, the conclusion reached herein is not in conflict with the general principle for which the cited cases stand.

The answer to Question No. 2 is in the negative.

*Question No. 3*

Does House Bill 438 with House Amendment 1, violate Article II, Section 1 of

the Constitution of the State of Delaware for the reason that the delegation of the power to reorganize school districts to the State Board of Education in Section 1004 thereof is an invalid delegation of legislative power?

Article II, § 1 of the Delaware Constitution provides that the legislative power of the State shall be vested in the General Assembly. It is the law that the General Assembly may not delegate to any other agency authority to exercise its legislative powers. State ex rel. Morford v. Tatnall, 2 Terry 273, 21 A.2d 185.

This is not to say, however, that the General Assembly may not enact a law exercising one or more of its legislative powers, declaring the policy of the law, fixing the principles which are to control in given cases, and, at the same time, delegate to an administrative body the power to ascertain the facts which will determine when the power exercised by the act shall take effect and be enforced. In re Opinion of the Justices, 4 Storey 366, 177 A.2d 205.

The precise question before us, therefore, is whether or not the Act merely delegates to the State Board of Education authority to determine in its discretion facts and conditions which will cause the legislative power exercised by the Act, i. e., the reorganization of school districts, to take effect, or whether it, in fact, delegates the power to legislate new school districts into existence.

We are of the opinion the Act is not an improper delegation of legislative power to the State Board of Education for the reason that it fixes the general principles and standards which are to control the Board in the exercise of its discretion. We are of this opinion for the following reasons:

The general purpose of the law is set out in § 1001 to be to provide for the reorganization of existing school districts by the retention of some existing districts and the combination of others in accordance with the policies, procedures, standards and criteria established by the Act.

By § 1003, the State Board of Education is directed to adopt specific criteria for such purposes which take into account certain enumerated factors, viz., topography, pupil population, community characteristics, transportation of pupils, use of existing school facilities, existing school districts, potential population changes and the capability of providing an effective education. It is to be noted that § 1003 is mandatory that the State Board of Education shall adopt criteria which take into consideration all of the listed elements.

By § 1004(c), the State Board is prevented from adopting any plan of reorganization which fails to meet certain minimum requirements. Of paramount importance in this respect is (a) the requirement that each district shall offer an instructional program for twelve grades; (b) the fixing of minimum and maximum pupil population of reorganized districts; (c) the prohibition against combining other than whole existing districts and against the subdividing of existing school districts; (d) the establishment of the City of Wilmington as a reorganized school district; (e) the prohibition against the consolidation of an existing district with 1900 pupils in twelve grades with an area of over 100 square miles, and (f) the exclusion of a district from consolidation which operates cooperatively with a school district of another state.

It seems clear to us that, by reason of §§ 1003 and 1004, the State Board of Education is told precisely what it may and what it may not do. Any plan of reorganization it formulates must not only satisfy the precise requirement of § 1004, but must also be formulated in the light of criteria set out in § 1003, which, by § 1001, are made binding on the State Board of Education.

We are of the opinion that sufficient and adequate standards have been set up under

which the State Board of Education acts to make it clear that the Act is not an unconstitutional delegation of legislative power.

In this connection, we have considered Chartiers Valley Joint Schools v. County Board of School Directors, 418 Pa. 520, 211 A.2d 487, upon which the opponents place special reliance. Our conclusion is not, in our opinion, in conflict with that case.

The answer to Question No. 3 is in the negative.

*Question No. 4*

Does House Bill 438 with House Amendment 1, violate Article II, Section 16 of the Constitution of the State of Delaware in that it embraces more than one subject?

Article II, § 16 of the Constitution requires that no bill introduced in the General Assembly shall embrace more than one subject, which shall be expressed in its title.

The title of the bill before us is as follows:

"AN ACT TO AMEND PART I, TITLE 14 OF THE DELAWARE CODE ENTITLED "FREE PUBLIC SCHOOLS" TO PROVIDE FOR THE REORGANIZATION OF SCHOOL DISTRICTS TO BE EFFECTED BY AMENDING AND REPEALING EXISTING LAWS PERTAINING THERETO."

■ It is now settled in this State that Article II, § 16 does not require the title of a bill to be an index of its contents. Its requirements are satisfied if the title is sufficient to put interested parties on notice that the bill relates to a subject in which they are interested in a manner which would lead them to inquire into it. In re Opinion of the Justices, 4 Storey 366, 177 A.2d 205.

It is suggested that this title does not meet this standard because the bill contains many matters which are not referred to at all in the title, such as the elimination of the right of referendum before consolidating school districts.

■ However, we think the title has broad implications which should cause an interested person to inquire into its contents. As we said in our opinion to the Governor cited above, "The fundamental purpose of the section is to prohibit the passage of sleeper legislation." We think by no stretch of the imagination can this bill be so characterized.

The answer to Question No. 4 is in the negative.

*Question No. 5*

Does House Bill 438 with House Amendment 1, violate Article 1, Section 10 of the United States Constitution for the reason that Sections 1006 and 1027 thereof impair the obligation of contract with the holders of the outstanding bonds of component former school districts and reorganized school districts which are consolidated because the assumption of outstanding indebtedness by reorganized school districts and consolidated reorganized school districts might reduce the ratio of assessed valuation to outstanding debt as it existed at the time the debt was created?

■ The answer to this question is to be found in In re School Code of 1919, 7 Boyce 406, 108 A. 39. In response to an argument that the creation of new school districts would impair the contract existing between the old districts and its bondholders, the Chancellor and Law Judges gave as their opinions that no impairment of contract had occurred. This was for the reason that the property securing the bonds remained the same and the bondholders' rights to enforce the collection of principal or interest remained the same.

We think this opinion is controlling. The primary security for the bondholder is the obligation of the school district to levy taxes to carry the bonds. While it is pos-

sible that a technical dilution in realty assessed value behind each bond may result because of district consolidation, that is no different than the technical dilution which results from a subsequent issue of bonds by the same district.

It has never been suggested that a second bond issue is an impairment of the contract with prior bondholders. Indeed, it could not be so suggested, for the security of the bondholder is the district's promise to pay and its obligation to collect sufficient taxes to enable it to do so, whatever the ratio between real estate assessment and bond obligation may be.

In this connection, we have considered the many cases from other jurisdictions cited by the opponents. In so far as they may be contrary to the conclusion we reach, they must be deemed unpersuasive in the light of the controlling In re School Code of 1919, supra.

The answer to Question No. 5 is in the negative.

The foregoing is the unanimous opinion of the Justices of the Supreme Court.

Respectfully submitted,

DANIEL F. WOLCOTT,
Chief Justice

JAMES B. CAREY,
D. L. HERRMANN,
Associate Justices.