THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware, and Joseph S. Wilson being the Mayor of the Mayor and Council of Wilmington, James A. LeFevre, Fred Brown, Leo J. Dugan, Paul E. Moore, Gerald J. Farrell, Frank J. Corsano, Edward R. Bell, Harvey Y. Wood, J. Ernest Barkley, Robert L. Armstrong, Martin J. Walsh, Frank J. O'Bara and Albert T. Strawbridge, being members of and comprising the Council of the Mayor and Council of Wilmington, Defendants Below, Plaintiffs-in-Error, v. THE STATE OF DELAWARE, upon the relation of PIERRE S. DuPONT, Plaintiff Below, Defendant-in-Error.

*(November 24, 1947.)*

HARRINGTON, Chancellor, RICHARDS, C. J., TERRY and CAREY, J. J., sitting.

*David F. Anderson* for The Mayor and Council of Wilmington, et al., plaintiffs-in-error.

*William H. Foulk* (*Herbert L. Cobin,* of counsel) for Pierre S. duPont, the relator, defendant-in-error.

Supreme Court, No. 3, September Session, 1947.

HARRINGTON, Chancellor:

Pierre S. duPont, a citizen and taxpayer, filed a petition in the court below for the issuance of a writ of mandamus against The Mayor and Council of Wilmington, a municipal corporation of this State, Joseph S. Wilson, the Mayor, and thirteen individuals who were members of the Council of the said corporation. In substance, the relator's petition stated that the Board of Public Education in Wilmington was a corporation created by the legislature of the State of Delaware, charged with the supervision and government of the public schools in the City of Wilmington, and empowered to fix the qualifications and salaries of superintendents, principals, teachers and employees; that to insure the effective operation of the public school system during the fiscal year commencing July 1, 1947, and ending June

30, 1948, the Board of Public Education in the month of April, 1947, submitted to the city Council an estimate of its necessary expenses for the said fiscal year which amounted to $774,472.47; that sum was $468,968.75 greater than the amount which had been appropriated by the Council for the preceding fiscal year; that approximately $282,400 of the estimated necessary expenses was required to effect an adjustment in the teachers' salaries and the employment of additional teachers to meet the increased enrollment in elementary schools and in special educational classes; that the remainder of the increased amount over the estimate for the preceding year was necessary to provide for the increase in the cost of instructional supplies, materials, text books, janitor supplies, maintenance and operational costs; that Council was required to appropriate the amount determined to be necessary by the Board for these purposes and to raise the funds by the levy and collection of a school tax upon the taxable property in Wilmington to the extent that the tax, excluding the amount necessary to pay the interest on the bonded debt and for the retirement of bonds falling due during the fiscal year, should not exceed seven mills on each dollar of the taxable property; that Council proposed to appropriate to the Board $394,000 less than the amount estimated by the Board as necessary for the efficient operation of the public schools in the City of Wilmington during the fiscal year.

The relator sought the issuance of a peremptory writ of mandamus directing the respondents below, the plaintiffs-in-error, to appropriate to the Board of Public Education the full amount of its estimated requirements, and to levy and collect a tax for school purposes upon the taxable property in Wilmington to provide the necessary funds for such appropriation.

The court below denied a motion to dismiss the petition.

The respondents waived any right to file an answer, and the court entered an order directing that a peremptory writ of mandamus issue, as prayed for in the petition.

The question presented by the assignments of error filed was whether the Council of The Mayor and Council of Wilmington was compelled to appropriate the amount requested by the Board of Public Education in Wilmington for the operation of the public schools in that city, and whether such duty could be enforced by the mandamus proceeding instituted in the court below. It was conceded that the sum requested amounted to less than seven mills on each dollar of taxable property in the city.

As early as 1905, by a special Act of the Legislature, approved March 30th (Chapt. 92, Vol. 23, Laws of Delaware), the City of Wilmington was made a Special Consolidated School District and the "Board of Public Education in Wilmington" was made a body corporate. The same provisions were included in the amendments to the 1905 school law in 1921 (Chapt. 163, Vol. 32, Laws of Del.), and in 1931 (Chapt. 202, Vol. 37, Laws of Del.). Section 2 of the 1921 amendment to the school law also provides that the Board of Public Education in Wilmington "shall have general and supervising control, government and management of all the public schools and all the public school property of the city." That section confers broad powers of supervision and management on the Board, including the power to appoint officers, agents and employees as it may deem necessary; to fix their compensation, to fix the qualifications of superintendents, principals and teachers and to fix their salaries; to purchase, exchange and repair school apparatus and furniture; to furnish text books and school supplies; to procure fuel; to pay salaries and wages; to establish kindergartens, playgrounds, elementary schools and other schools and classes "which it may deem necessary

or wise whether for minors or adults." The original school law of 1905 gave the Board of Public Education general supervisory powers over the public schools in the City of Wilmington, but contained less specific language. The 1931 amendment to the school law also contains some pertinent general language relating to the same subject which is, however, wholly consistent with the broad language of Section 2 of the Act of 1921.

Sections 9 and 11 of the school law of 1905, as amended in 1927 (Chapt. 87, Vol. 35 Laws of Delaware, pp. 263, 264, Rev. Code of Wilmington §§ 487, 491) in part provide:

"Section 9. * * *

"The Board shall, during the month of April in each year, cause to be prepared and laid before them estimates of their probable revenue and expenses for the ensuing fiscal year, which estimates they shall lay before The Council on or before the first stated meeting of Council in May following. At the time of presenting to Council said estimates of revenue and expenses, the Board shall in addition thereto include the amount necessary to be paid for interest on bonds in the following fiscal year, and also, when necessary, the amount required in that year for the retirement of bonds.

"The said Board, early in June in each year, after The Council shall have made appropriation for the use of the public schools for the following fiscal year as herein provided, shall make the apportionment and appropriations for their expenditures for that year, based as nearly as may be, upon the estimates made by them in April previous, and such apportionment and appropriations shall be specified and arranged under the heads or items designated in said estimates. The said Board shall have no power or authority except when specially authorized by act of the

General Assembly to borrow money or contract or create any debt or liability except ordinary debts and liabilities incurred in executing the duties imposed on them by law, to be paid out of the said appropriation made by Council and the receipts of the year for the time then current. No money shall be paid from the treasury of the Board unless the same shall have been appropriated as aforesaid."

"Section 11. The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided that the amount to be raised by taxation for school expenses in any one year, including all the expenses which the Board of Education is authorized to incur under the provisions of this Act for the maintenance and operation of said schools, but not including interest on bonded debt and retirement of bonds falling due, shall not exceed seven mills on each one dollar of the value of real and personal property as assessed and taxable for City purposes. The amount collected for school purposes shall be paid into the City treasury as other taxes are paid."

When these provisions are read with other sections of the school law, giving broad administrative powers to the Board of Public Education in Wilmington, it is reasonable to conclude that the legislature intended to give the Board the right to determine what funds were necessary to operate the public schools under their management and control. The city was, therefore, merely the agency through which such funds were to be raised by assessment and taxation and had no discretionary power with respect to the amount required. That is not an unknown statutory practice in similar cases in this State. See In re School Code of 1919, 7 Boyce 406, 108 A. 39. Under Section 9,

estimates of the probable revenues of the Board of Education and of the probable expense of operating the schools during any fiscal year are to be prepared under the supervision of the Board and laid before Council. At the same time the Board must lay before Council its estimate of the sum required to pay the interest on any outstanding school bonds and for the redemption of any such bonds that may fall due during the fiscal year. After the city Council shall have made the "appropriation," the Board must apportion its funds "based as nearly as may be upon the *estimates* made by them in April previous, and such apportionment * * * shall be specified and arranged under the heads or items *designated in said estimates.*" While the apportionment is not made until Council shall have made the appropriation, the language of the statute seems to indicate that the appropriation to the Board must conform to its estimates rather than that Council can determine the amount. The same direction appeared in the original Act, under which the amount to be raised and appropriated by Council was clearly governed by the estimate of the Board. Under Section 11, the city Council "when determining" the amount necessary to be raised for public use (of the city) shall "also include the *sum necessary to be raised* on persons and estates *for executing the foregoing provisions.*" That reference necessarily includes Section 2 of the Act of 1921, which amended the 1905 school law, of which Section 9 of the present Act is a part, and the reasonable inference is that the "sum necessary" is the sum estimated by the Board. Furthermore, Section 11 contains a proviso "that the amount to be raised by taxation for school expenses in any one year, *including all the expenses which the Board of Education is authorized to incur* under the provisions of this Act, for the maintenance and operation of said schools, * * * shall not exceed seven mills on each one dollar of the value of real and personal property

as assessed and taxable for city purposes." The amount which can be raised for necessary school purposes in any fiscal year seems to be limited by this provision alone, and there is nothing to indicate that the city Council is authorized to determine the needs of the Board. The reasonable conclusion, therefore, is that the "sum necessary to be raised * * * for executing the foregoing provisions" can only be determined from the estimate which the Board, in the honest exercise of its judgment, must prepare and file annually with Council as the basis and authority for the tax levy. See 56 *C. J.* 636. The policy of such a statutory provision is for the legislature to determine. The Board is a quasi public body and when determining its needs it is natural to require it to disclose all other probable revenues (from the State) as well as the expenses connected with any bonded debt. The use of the city machinery for levying and collecting the tax necessary for school purposes is unquestionably contemplated, but it does not follow that the city appropriates its own funds. The Act provided that the "amount collected shall be paid into the City treasury as other taxes are paid." Therefore, an appropriation by the city Council to the Board of Public Education is required, but that does not mean that the discretion of Council can govern the amount to be raised and appropriated. While the boundaries of the school district are co-extensive with the limits of the city, the Board of Public Education in Wilmington is a separate corporate entity (43 *C. J.* 871; 56 *C. J.* 257; 106 *A. L. R.* 916), and only the special funds raised must be appropriated for its use. The books of the Board of Education are subject to examination by the mayor and city auditor with respect to all "labor performed or materials or supplies furnished." Sec. 8, Chapt. 163, Vol. 32, Laws of Del. The auditor also examines all bills and drafts and must approve them before they are presented to the Board for payment, but his refusal

to do so may be overruled by the Board. Sec. 9, Chapt. 163, Vol. 32, Laws of Del. Section 82 of the city charter expressly gives Council the power to assess property for school tax purposes. Section 83 requires it to fix the tax rate and provides that "the Council shall also at the same time include the sum necessary to be raised for the use of the public schools of the said city * * * and the amount * * * shall be collected * * * as other City taxes." But that provision does not make them city taxes. The phraseology of Section 83 is strikingly similar to one of the provisions quoted from Section 11 of the present school law.

Sections 16 and 17 of Chapter 121, Volume 28, Laws of Delaware, do not change the real meaning of any of these provisions. The following cases, cited by the Board, however have little bearing on the question with respect to the meaning of the statute. *Decatur v. Auditor of City of Peabody*, 251 *Mass*. 82, 146 *N. E.* 360; *Ring v. Woburn*, 311 *Mass*. 679, 43 *N. E.* 2d 8; *Hayes v. Brockton*, 313 *Mass*. 641, 48 *N. E.* 2d 683; *Jones v. State*, 17 *Fla*. 411; *Board of Education v. Burgon*, 62 *Utah* 162, 217 P. 1112; *School Dist. v. Squires*, 82 *Kan*. 806, 109 P. 168; *Fiscal Court of Logan County, et al., v. Board of Education*, 138 *Ky*. 98, 127 *S. W.* 527.

[7] The appellants claim that when the legislative history of Sections 9 and 11 of the 1927 Act is considered, it is evident that Council had some discretion in determining the amount to be appropriated to the Board of Public Education for the operation of the schools. We are unable to agree with that contention.

The school law of March 30, 1905[1] (Chapt. 92, Vol. 23,

---

[1] Section 9. "The Board shall, during the month of April in each year, cause to be prepared and laid before them estimates of their probable revenue and expenses for the ensuing fiscal year, which estimates they shall lay before The Council on or before the first stated

Laws of Del.) also required the Board of Public Education to make and file estimates of its needs but, with certain limitations on the amount it could demand for current expenses in any fiscal year, required Council to appropriate an amount equal to that computed and laid before it by the Board.

The following pertinent Acts have also been enacted since 1905:

(1) Section 11 of the school law of 1905 was amended by an Act of the legislature, approved March 1, 1907 (Chapt. 125, Vol. 24, Laws of Del.). That amendment provided:

"Section 1. That Chapter 92, Volume 23, of the Laws of Delaware, entitled 'An Act to provide for the organization and control of the Public Schools of the City of Wilmington', be and the same is hereby amended by striking out all after the word 'not' in the twenty-third line of Section 11 of

meeting of Council in May following. At the time of presenting to Council said estimates of revenue and expenses, the Board shall, if necessary, also in addition thereto, present to Council an estimate not to exceed Twenty Thousand Dollars for the erection or extension of school houses and for furniture and heating apparatus for the same. The said Board early in June in each year, after the Council shall have made appropriation for the use of the public schools for the following fiscal year as hereinafter mentioned, shall make apportionment and appropriations for their expenditures for that year, based as nearly as may be, upon the estimates made by them in April previous, and such apportionment and appropriations shall be specified and arranged under the heads or items designated in said estimates. The expenditures of the year under any head or item of appropriation, shall not exceed that item of appropriation unless the same be voted for by two-thirds at least of all the members of said Board, a record of which vote shall be made upon the minutes. Under no circumstances shall the appropriation for the erection or extension of school houses, and for furniture and heating apparatus for the same, be used for any other purpose. The said Board shall have no power or authority, except when specially authorized by act of the General Assembly, to borrow money, or contract or create any debt or liability except ordinary debts and liabilities incurred in executing the duties imposed on them by law, to be paid out of the said appropriation made by Council and the receipts of the year for the time then current; no money shall be paid from the treasury of the Board unless the same shall have been appropriated as aforesaid."

Section 11. "The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the

said act, down to and including the word 'preceding', in the twenty-seventh line of said section of said act, and inserting in lieu thereof the following words: 'be less than One hundred and eighty-eight thousand dollars for the fiscal year 1907-8, and the increase for any succeeding fiscal year shall not be less than two percent. additional upon the aggregate amount for the fiscal year preceding, provided, further, however, that in the event that The Council, at any time, shall make an appropriation in excess of the minimum appropriation or percentage of increase as hereinbefore provided, the said Council shall have the power and authority to designate what proportion, if any, of the increase so appropriated over and above the before mentioned mini-mum, shall be used for the purpose of adjusting, equalizing and increasing the salaries of teachers employed by said Board, and so much of said fund so designated by The Coun-

---

City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided, that the amount to be raised for current school expenses as aforesaid in any one year shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same.

"The amount collected for school purposes shall be paid into the city treasury as other taxes are paid. At the time of making the annual appropriations for public use, *the Council shall also make an appropriation for current school expenses equal in amount to that annually computed and laid before said Council by the 'Board of Public Education in Wilmington'*; provided that the sums so computed and appropriated shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same; and, provided further, that any demand made by the Board upon the Council for ordinary and current expenses, exclusive of the amount required for the erection or extension of school houses and for furniture and heating apparatus for the same shall not exceed One Hundred and Eighty-two Thousand dollars for the fiscal year A. D. 1905-6 and the increases shall not for any succeeding fiscal year, be greater than one and one-half per cent. additional upon the aggregate amount for the fiscal year preceding. The Council shall appropriate annually for the erection or extension of school houses and for furniture and heating apparatus for the same the amount estimated by said Board therefor not to exceed Twenty Thousand dollars per annum."

cil shall thereupon be used for no other purpose than to adjust, equalize and increase such salaries of teachers'."

The result of that amendment, therefore, was: (1) that the minimum demand the Board of Education could make on Council for ordinary and current school expenses for the fiscal year 1907-8 was $188,000; (2) that the increased demand for any succeeding fiscal year should not be less than two percent of the aggregate amount for the preceding fiscal year; and (3) should Council "make an appropriation in excess of the minimum appropriation or percentage as hereinbefore provided, the said Council shall have the power and authority to designate what proportion, if any, of the increase so appropriated, over and above the beforementioned minimum, shall be used for the purpose of adjusting, equalizing and increasing the salaries of the teachers employed by said Board."

(2) Section 15 of an Act of the legislature entitled "An Act to altar (alter) and re-establish the statutes relating to the City of Wilmington," approved March 5, 1907 (Chapt. 177, Vol. 24, Laws of Del.) added certain paragraphs to Section 43 of the City Charter. It first provided that Section 31, Chapter 207, Volume 17, Laws of Delaware, be amended by adding: "First. The Council shall have the power and it shall be its duty on or before the first day of June in each and every year, to appropriate to and for the Departments hereinafter named, sums of money to whatever amounts the Council may deem proper, provided that the minimum amount for the Departments respectively shall not be less than the following * * *." A list of city departments followed which included "The Board of Public Education in Wilmington, One Hundred and eighty thousand dollars per annum." The Act referred to in Section 15 was entitled "An Act to revise and consolidate the statutes relating to the City of Wilmington," which was

passed in 1883. Section 17 of the 1907 Act provided: "That all the statutes of the State of Delaware relating to the City of Wilmington not inconsistent herewith are hereby continued and reestablished; and all acts inconsistent herewith be and the same are hereby repealed."

(3) Chapter 104, Volume 25, Laws of Delaware, approved April 15, 1909, provided: "That Chapter 92, Volume 23, Laws of Delaware, entitled 'An Act to provide for the organization and control of the Public Schools of the City of Wilmington', as amended by Chapter 125, Volume 24 Laws of Delaware, be and the same is hereby amended by adding thereto after the word 'preceding' and before the word 'provided' in the twelfth line of Section 1 of said amending Act the following: "Provided, however, that said increase shall be in proportion to the increase in revenue of the City of Wilmington, but in no year shall said increase be more than five percent * * *."

(4) The Act of February 17, 1915 (Chapt. 166, Vol. 28, Laws of Del.), also amending the school law, authorized Council by ordinance passed by a majority vote "to transfer from the item of appropriation known as 'the incidental and miscellaneous account' for the fiscal year, beginning July 1, A. D. 1914 to the Board of Public Education in Wilmington for current school expenses the sum of Five Thousand, Two Hundred and Fifty ($5,250.00) Dollars, which said sum shall be in addition to the money heretofore appropriated to said Board for said purpose and for said fiscal year:" As in the 1907 amendment, it further provided that Council should have the power and authority to designate what proportion, if any, of the said sum should be used for "the purpose of adjusting, equalizing and increasing the salaries of principals and teachers employed by said Board * * *."

(5) The amendment of March 16, 1915 (Chapt. 167,

Vol. 28, Laws of Del.) inserted a new Section 11 in the 1905 school law, as amended, which provided in part:

"Section 11. The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided, that the amount to be raised for current school expenses as aforesaid in any one year shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same. The amount collected for school purposes shall be paid into the city treasury as other taxes are paid. At the time of making the annual appropriation for public use, the Council shall also *make an appropriation for current school expenses equal in amount to the amount annually computed and agreed upon by the said Council and the 'Board of Public Education in Wilmington';* provided that the sums so computed and appropriated shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same. The Council shall appropriate annually for the erection or extension of school houses and for furniture and heating apparatus for the same the amount estimated by said Board therefor not to exceed Twenty Thousand Dollars per annum."

That Act, therefore, provided that at the time of "making the annual appropriation for public use," Council should make "an appropriation for current school expenses equal in amount to the amount annually computed and agreed upon by the said Council and the 'Board of Public Education in Wilmington'."

(6) The amendment to the 1905 school law of March 30, 1921 (Chapt. 163, Vol. 32, Laws of Del.), however,

enacted new Sections 9 and 11, which provide in part as follows:

Section 9. "* * *. The Board shall, during the month of April in each year, cause to be prepared and laid before them estimates of their probable revenue and expenses for the ensuing fiscal year, which estimates they shall lay before Council on or before the first stated meeting of Council in May following. At the time of presenting to Council said estimates of revenue and expenses the Board shall, in addition thereto, include the amount necessary to be paid for interest on bonds in the following fiscal year, and also, when necessary, the amount required in that year for the retirement of bonds, provided that the total estimate of expenditures for the Board of Public Education in Wilmington, exclusive of the amount of bonds, that may be issued as in this Act hereinafter provided, shall not exceed nine mills on each dollar of the value of real and personal property as assessed and taxable for current city revenue. The said Board, early in June in each year, after the Council shall have made appropriation for the use of the public schools for the following fiscal year as herein provided, shall make the apportionment and appropriations for their expenditures for that year, based as nearly as may be upon the estimates made by them in April previous, and such apportionment and appropriations shall be specified and arranged under the heads or items designated in said estimates. The said Board shall have no power or authority except when specially authorized by act of the General Assembly to borrow money or contract or create any debt or liability except ordinary debts and liabilities incurred in executing the duties imposed on them by law, to be paid out of the said appropriation made by Council and the receipts of the year for the time then current. No money shall be paid from the treasury of the Board unless the same shall have been appropriated as aforesaid."

Section 11. "The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided, that the amount to be raised by taxation for school expenses in any one year including all the expenses which the Board of Education is authorized to incur under the provisions of this Act, and including expenses for maintenance, operation, interest on bonded debt, and retirement of bonds falling due, shall not exceed seven mills on each one dollar of the value of real and personal property as assessed and taxable for city purposes. The amount collected for school purposes shall be paid into the city treasury as other taxes are paid. At the time of making the annual appropriation for public use, the Council shall also make an appropriation for school expenses equal in amount to the estimate of revenues and expenses laid before said Council under the provisions of Section 7 of this Act, being Section 9 of the Act as amended, provided that the sums so appropriated shall not exceed seven mills on each one dollar of the assessed value of city property as assessed and taxable for city purposes."

The principal change in the new Section 9 of the 1921 amendment was the insertion of the proviso that "the total estimate of expenditures for the Board of Public Education in Wilmington, exclusive of the amount of bonds that may be issued as in this Act hereinafter provided, shall not exceed nine mills on each dollar of the value of real and personal property as assessed and taxable for current city revenue."

The principal changes in Section 11 were (1) the insertion of the seven mills limitation with respect to the amount to be raised by taxation for school expenses in any

one year, including all the expenses which the Board of Education was authorized to incur for maintenance, operation, interest on bonded debt and retirement of bonds falling due; and (2) the elimination of the agreement provision in the prior Act and the insertion of the old express mandatory language which required Council "to make an appropriation for school expenses equal in amount to the estimate of revenues and expenses laid before said Council" under the provisions of Section 9 as amended.

■ The 1927 amendment to the 1905 school law, as amended and now in effect, sought to eliminate the inconsistencies in the prior Act and some of the limitations on the amount that could be raised for school purposes by (1) omitting from Section 9 the nine mills limit on any estimate filed by the Board; and (2) changing the first proviso in Section 11 to read "that the amount to be raised by taxation for school expenses in any one year, including all expenses which the Board of Education is authorized to incur under the provisions of this Act for the maintenance and operation of said schools, but not including interest on bonded debt and retirement of bonds falling due, shall not exceed seven mills on each one dollar of the value of real and personal property as assessed and taxable for city purposes." It also omitted the following provision at the end of Section 11 of the 1921 Act: "At the time of making the annual appropriation for public use, the Council shall also make an appropriation for school expenses equal in amount to the estimate of revenues and expenses laid before said Council under the provisions of Section 7 of this Act, being Section 9 of the Act as amended, provided, that the sums so appropriated shall not exceed seven mills on each one dollar of the assessed value of city property as assessed and taxable for city purposes." The appellants claim that the omission of the latter provision clearly indicates that the duties of Council, with respect to the levy and assessment of

school taxes, are no longer intended to be governed by the estimates of the Board. But as we have already indicated, other provisions of the Act are difficult to reconcile with that argument. It, therefore, seems reasonable to conclude that the omission of the provision in question does not change the meaning of the statute. No language of the school law giving Council any discretionary powers is pointed out, and there are no other statutory provisions which can affect its meaning.

The 1907 amendment to the city charter did not expressly repeal any of the provisions of the amended school law. Section 17 merely provided for the repeal of any inconsistent Acts, and therefore did not determine what acts were intended. See 59 C. J. 902. Repeals by implication are not favored and are ordinarily only effective when the provisions of a subsequent Act relating to the same subject are so inconsistent with, and repugnant to, the prior Act that they cannot be reconciled on any reasonable hypothesis. *Di Angelo v. McCormick Bros., Inc.*, 19 *Del. Ch.* 307, 168 A. 79; *State v. Fahey*, 2 *W. W. Harr.* (32 *Del.*) 504, 126 A. 730; *Lewis' Sutherland Stat.* Construct., §§ 247, 267. That the latter statute is different is not enough; it must be contrary to the prior Act. Lewis' Suther. Stat. Construct., § 267. That rule is particularly applicable when considering Acts passed at the same legislative session. 59 *C. J.* 928; Lewis' Suther. Stat. Construct., § 268.

The amendment to the charter related to the City of Wilmington, and prior thereto Council merely had certain ministerial duties with respect to school funds. The enactment of that Act indicated a definite change in policy, but it is not claimed that the title failed to give reasonable notice of the enlarged powers of Council by its provisions. Furthermore, regardless of whether the Act made the Board of Public Education a real department of the City of Wil-

mington, it is difficult to reconcile the discretionary powers given Council with respect to appropriations to the Board of Public Education, in excess of a specified minimum limit, with the provisions of Section 11 of the 1905 school law, as amended by the Act of March 1, 1907. By that Act, the Board was authorized to determine what sums were necessary to operate the schools, though the minimum demand it could make for the fiscal year 1907-8 was $188,000, and the increase in subsequent years could not be less than 2%. The argument that the 1907 amendment to the charter merely intended to fix the minimum amount Council could be required to appropriate is hardly consistent with the language used. On the other hand, the 1909 amendment to the school law was inconsistent with the provisions of the city charter and, so far as the appropriation to the Board of Education was concerned, impliedly repealed its provisions. The 1909 Act purported to amend the 1905 school law, as amended in 1907 by Chapter 125, Volume 24, Laws of Delaware, by inserting the following provision: "provided, however, that said increase shall be in proportion to the increase in revenue of the City of Wilmington, but in no year shall said increase be more than five percent." Prior to the 1907 amendment, the 1905 Act provided that any "demand" made by the Board on Council "for ordinary and current expenses" should not exceed $182,000, for the fiscal year 1905-6 and the increase in any subsequent year should not be greater than 1½% on the aggregate amount for the preceding year. As the 1907 Act, intended to be amended, had been impliedly repealed by the amendment to the city charter, it was a complete nullity in 1909. Moreover, the apparent recognition of the existence of the 1907 Act by its purported amendment was not enough to revive and re-enact its provisions. Endlich Inter. Statutes, 372. If, however, language intended to be inserted in a repealed statute, when read alone, has a clear and definite meaning, it will be treat-

ed as a valid and effective Act, and the reference to the Act which it purports to amend will be regarded as surplusage. 59 *C. J.* 853; *Abrams v. Smith,* 98 *N. J. L.* 319, 119 *A.* 792; *Com. v. Chesapeake etc. R. Co.,* 118 *Va.* 261, 87 *S. E.* 622; *People v. Board of County Canvassers of Jefferson County, etc.,* 77 *Hun.* 372. That principle is applicable here.

The 1909 amendment limited the subsequent increase in any demand by the Board on Council for current school expenses to five percent. That provision can hardly be reconciled with the power of Council to determine the amount, and the reference to the revenue of the City of Wilmington is merely a basis for the calculation.

While certain rights over the use of the fund were given Council, the fact that the legislature deemed it necessary to expressly authorize an extra appropriation of $5,250 to the Board of Public Education from city money by the Act of February 17, 1915, seems to lend some support to this conclusion. Moreover, if it can be said that the Act of 1909 did not repeal the provisions of the charter amendment, giving discretionary powers to Council over the appropriation to the Board of Public Education in any fiscal year, it is difficult to escape the conclusion that the Act of March 16, 1915 had that effect. While it contained no provision requiring an appropriation by Council if no agreement should be reached with the Board with respect to the amount, notwithstanding that omission, an Act requiring an agreement can hardly be reconciled with an Act giving Council discretionary powers. The court below reached that conclusion apparently without considering the 1909 Act; but in either event the result is the same. It is unnecessary to consider the effect of any subsequent statutes on the 1907 amendment to the city charter, though there

354

was an express mandatory provision with respect to Council's duties in the 1921 Act.

Conceding that a writ of mandamus will only issue to compel the performance of a clear legal duty (*State ex rel Lucey v. Terry*, 9 *W. W. Harr.* (39 *Del.*) 32, 196 *A.* 163; *State ex rel Oxy-Hydro. Co. v. Simmons*, 3 *Penn.* 291, 50 *A.* 213), that duty appears from the statute. The necessary tax was not wholly levied and appropriated prior to June 1, 1947, but the Board of Public Education filed the estimates within the prescribed time, and there is no statutory provision prohibiting an assessment and appropriation after June 1. Council, therefore, cannot rely on its failure to comply with its statutory duty as a defense to the issuance of the writ. Nor is there any other adequate remedy, either under the statute of March 31, 1921 (Chapt. 160, Vol. 32, Laws of Del.), providing for special elections to determine whether to levy and collect additional taxes for school purposes, or under the declaratory judgment Act enacted at the last legislative session, and approved April 10, 1947.

It is unnecessary to consider the appellants' final argument that the estimate of the Board filed with Council cannot be enforced because the legislative Act providing for an appointive Board of Public Education (Chapt. 202, Vol. 37, Laws of Del.) did not receive the two-thirds vote, required by Section 1, Article IX of the Constitution of 1897. In any event, the Board acted as a de facto body in performing its statutory duties and the City Council is bound accordingly. 56 C. J. 643.

No other questions were argued.

The judgment of the court below is, therefore, affirmed.

Richards, C. J., concurs in this opinion. Judge Carey reached the same conclusion, though on slightly different grounds.

TERRY, J. (dissenting):

The substantive question is whether the Board of Public Education in Wilmington, called Board, or the Council of the Mayor and Council of Wilmington, called Council, is authorized to determine the amount of money not exceeding a prescribed maximum·to be raised annually by school taxes for the use of the public schools in Wilmington.

I shall commence with the Act of 1905, where the basic law applicable to the Board of Education in Wilmington is found. Chapter 92, Volume 23, Laws of Delaware. By this Act the City of Wilmington was made a consolidated school district.

Section 2 of the Act provides for an elected school board, which is given general and supervisory control of the government and management over all public schools and public school property of the City.

Two pertinent sections of the Act of 1905 are as follows:

Section 9. "* * *. The Board shall, during the month of April in each year, cause to be prepared and laid before them estimates of their probable revenue and expenses for the ensuing fiscal year, which estimates they shall lay before the Council on or before the first stated meeting of Council in May following. At the time of presenting to Council said estimates of revenue and expenses, the Board shall, if necessary, also in addition thereto, present to Council an estimate not to exceed Twenty Thousand dollars for the erection or extension of school houses and for furniture and heating apparatus for the same. The said Board, early in June in each year, after the Council shall have made appropriation for the use of the public schools for the following fiscal year as hereinafter mentioned, shall make apportionment and appropriations for their expenditures for that year, based as nearly as may be, upon the estimates

made by them in April previous, and such apportionment and appropriations shall be specified and arranged under the heads or items designated in said estimates. The expenditures of the year under any head or item of appropriation, shall not exceed that item of appropriation unless the same be voted for by two-thirds at least of all the members of said Board, a record of which vote shall be made upon the minutes. Under no circumstances shall the appropriation for the erection or extension of school houses, and for furniture and heating apparatus for the same, be used for any other purpose. The said Board shall have no power or authority, except when specially authorized by act of the General Assembly, to borrow money, or contract or create any debt or liability except ordinary debts and liabilities incurred in executing the duties imposed on them by law, to be paid out of the said appropriation made by Council and the receipts of the year for the time then current; no money shall be paid from the treasury of the Board unless the same shall have been appropriated as aforesaid."

"Section 11. The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided, that the amount to be raised for current school expenses as aforesaid in any one year shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same. The amount collected for school purposes shall be paid into the city treasury as other taxes are paid. At the time of making the annual appropriations for public use, the Council shall also make an appropriation for current school expenses equal in amount to that annually computed and laid before said Council by the 'Board of Public Education in Wilmington'; provided that the sums so computed and appropriated

shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same; and, provided further, that any demand made by the Board upon the Council for ordinary and current expenses, exclusive of the amount required for the erection or extension of school houses and for furniture and heating apparatus for the same shall not exceed One Hundred and Eighty-two Thousand dollars for the fiscal year A. D. 1905-6 and the increase shall not for any succeeding fiscal year, be greater than one and one-half per cent. additional upon the aggregate amount for the fiscal year preceding. The Council shall appropriate annually for the erection or extension of school houses and for furniture and heating apparatus for the same the amount estimated by said Board therefor not to exceed Twenty Thousand dollars per annum."

My associates have concluded that under the 1905 Act the Board alone had the authority to designate the amount of the appropriation. With this determination I concur. Nevertheless, it becomes important to analyze the 1905 Act in order to determine from what language such authority springs which places the duty upon Council to appropriate for the fiscal years 1905 and 1906 an amount equal to the request of the Board as set forth in their estimates not to exceed a designated maximum.

Certainly, this duty cannot be implied, even remotely, from the language of Section 2 of the Act, which merely confers the general supervisory control over the operation and maintenance of the City schools.

The majority say that the language of Section 9 "seems to indicate that the appropriation to the Board must conform to its estimates rather than that Council can determine the amount." With such a conclusion I am in complete disagreement.

Section 9 contains three pertinent sentences:

(1) "The Board shall, during the month of April in each year, cause to be prepared and laid before them estimates of their probable revenue and expenses for the ensuing fiscal year, which estimates they shall lay before the Council on or before the first stated meeting of Council in May following."

Surely, it cannot be seriously contended that this sentence confers such a duty upon Council. The language is clear and readily understandable. The Board is merely charged with the duty of having an estimate prepared and filing it with Council on or before the first stated meeting of Council in May.

(3) "The said Board, early in June in each year, after the Council shall have made appropriation for the use of the public schools for the following fiscal year as hereinafter mentioned, shall make apportionment and appropriations for their expenditures for that year, based as nearly as may be, upon the estimates made by them in April previous, and such apportionment and appropriations shall be specified and arranged under the heads or items designated in said estimates."

Under this sentence no duty is imposed upon Council to appropriate in terms of the Board's estimate. On the contrary, it is most clear that the Board shall meet early in June, after Council shall have made appropriation for school purposes for the next fiscal year, *and then* allocate the said appropriation made by Council *based as nearly as may be according to the estimates made by the Board in April*. This language, when read with the first sentence, indicates most emphatically that Council and not the Board has the authority to determine the amount of the appropriation.

(6) "The said Board shall have no power or authority,

except when specially authorized by act of the General Assembly, to borrow money, or contract or create any debt or liability except ordinary debts and liabilities incurred in executing the duties imposed on them by law, *to be paid out of the said appropriation made by* Council and the receipts of the year for the time then current; no money shall be paid from the treasury of the Board unless the same shall have been appropriated as aforesaid."

This sentence clearly states that the Board may not create any debt or liability except those ordinarily incurred in executing the duties imposed upon them, which debts are to be paid out of *the appropriation made to the Board by Council.*

Summarizing under Section 9, I find the language therein employed to be free of ambiguity, thus negativing the need of construction. The Board merely files estimates of their probable revenue and expenses for the ensuing fiscal year with Council on or before the first stated meeting of Council in May. Council then makes an appropriation, after which the Board makes an allocation of the amount appropriated by Council under heads and items as nearly as may be based upon their estimates of probable revenue and expenses as previously filed, and in administering said sums the Board shall not contract or create any debt except ordinary debts and liabilities incurred in executing the duties imposed upon them by law, *"to be paid out of the said appropriation made by Council."* The mere fact that the Board shall allocate the appropriation made by Council as nearly as may be to the estimates furnished by them of probable revenue and expenses clearly indicates that Council and not the Board shall determine the amount to be appropriated.

Section 11 contains two pertinent sentences:

(1) "The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; * * *."

My associates are of the opinion that the reasonable inference to be drawn from the use of the words "sum necessary" is that the "sum necessary" is the sum estimated by the Board. I do not think so. The language of this sentence clearly indicates to me that Council shall determine the "sum necessary" to be raised on persons and estates for executing the foregoing provisions, meaning the provisions as set forth in Sections 2 and 9 of the Act.

After considering Sections 2, 9, and the first sentence of Section 11, as above indicated, it is my opinion that the authority rests in Council and not in the Board to determine the amount of the appropriation.

(3) "At the time of making the annual appropriations for public use, the Council shall also make an appropriation for current school expenses equal in amount to that annually computed and laid before said Council by the 'Board of Public Education in Wilmington'; * * *."

Under this sentence I find an express mandatory duty upon Council to appropriate in terms of the estimate as filed by the Board. This language, however, is inconsistent with the other language under Sections 2, 9, and the first sentence of Section 11. Nevertheless, I conclude that the definite expression as indicated under this sentence establishes the authority, and only by reason of the language employed do I conclude that the Board and not the Council has the power under this Act to determine the amount to be appropriated for school purposes.

The next Act of importance is the Act of March 25,

1907. Ch. 177, Vol. 24, Laws of Del. By this Act the City Charter of the City of Wilmington was amended. Section 15 of said Act provides as follows:

"First. The Council shall have the power and it shall be its duty, on or before the first day of June in each and every year, to appropriate to and for the Departments hereinafter named, sums of money to whatever amounts the Council may deem proper, provided that the minimum amount for the Departments respectively shall not be less than the following:

"Board of Health, One thousand dollars per annum; Board of Police Commissioners, Ninety thousand dollars per annum; Board of Public Education in Wilmington, One hundred and eighty thousand dollars per annum; Board of Water Commissioners, One hundred and twenty thousand dollars per annum; Board of Directors of the Street and Sewer Department, One hundred thousand dollars per annum. Such appropriations shall be paid to the respective Departments in quarterly portions thereof during the month (sic) of August, November, February and May. All rents, incomes, receipts, revenues, and moneys from any and all sources now received, or hereafter to be received by any of said Departments (excepting the Board of Public Education in Wilmington, and excepting the annual appropriations made by the Council to the said Departments respectively), shall be paid monthly on the first secular day in each and every month by the said Departments respectively to the City Treasurer for the use of the City, to be expended for municipal purposes in such manner as the Council may deem proper."

While this amendment did not in express terms repeal or modify the 1905 School Act with reference to the authority to determine the amount of the appropriation for school purposes, nevertheless, it is later in point of time and con-

tains a provision repealing inconsistent Acts; and, since it reposed in Council alone the authority to determine the amount of the appropriation, I conclude the Act of 1905 was amended at least with respect to the body authorized to exercise the power. Thus, under this amendment will be found the first of a series of important changes relating directly to legislative policy. concerning the authority to determine the amount to be raised for school purposes.

The authority as conferred under this amendment remained in Council alone during the next eight years. On March 16, 1915, the Legislature enacted an Act, Ch. 167, Vol. 28, Laws of Del., amending Section 11 of the Act of 1905 by providing a new Section 11, as follows:

"Section 11. The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided, that the amount to be raised for current school expenses as aforesaid in any one year shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same. The amount collected for school purposes shall be paid into the city treasury as other taxes are paid. At the time of making the annual appropriation for public use, the Council shall also make an appropriation for current school expenses equal in amount to the amount annually computed and agreed upon by the said Council and the 'Board of Public Education in Wilmington'; provided that the sums so computed and appropriated shall be exclusive of the amount designated for the erection or extension of school houses and for furniture and heating apparatus for the same. The Council shall appropriate annually for the erection or extension of school houses and for furniture and heating

apparatus for the same the amount estimated by said Board therefor not to exceed Twenty Thousand Dollars per annum."

This Act, insofar as the question of authority to determine is concerned, repealed the Act of March 25, 1907. Ch. 177, Vol. 24, Laws of Del.

Now we are back to the original Act of 1905, as amended by this Act (1915). Sections 2 and 9 of the 1905 Act were not disturbed. Section 11 was radically changed. The first and second sentences are the same. However, the third sentence has been re-written and here I find the second important change in policy regarding the authority to determine, as under this sentence the Council shall make an appropriation for current school expenses "equal in amount to the amount annually computed and agreed upon by the said Council and the 'Board of Public Education in Wilmington'."

At this juncture I find Sections 2, 9, and the first two sentences of Section 11 to be the same; consequently, my conclusion relating to the meaning of the language employed is the same as I have previously indicated. However, I find under the third sentence of this amendment an express mandatory provision to the effect that the appropriation for current school expenses shall be equal in amount to an amount annually computed and agreed upon by Council and the Board. Here again, as in the Act of 1905, the language in the third sentence of Section 11 is inconsistent with other language of the Act. Nevertheless, I now conclude, as I did with reference to the original Act of 1905, that the definite expression as indicated in the third sentence of this amendment establishes the authority, and only by reason of the language employed am I able to say that the Board and the Council together have the authority to determine, rather than Council alone.

The authority thus conferred by the amendment of March 16, 1915, remained jointly in Council and the Board together during the next six years, or until March 30, 1921, at which time the Legislature amended Section 9 of the Act of 1905 by providing a new Section 9, and further amended Section 11 of said Act by providing a new Section 11. Ch. 163, Vol. 32, Laws of Del.

Section 9. "* * *. The Board shall, during the month of April in each year, cause to be prepared and laid before them estimates of their probable revenue and expenses for the ensuing fiscal year, which estimates they shall lay before the Council on or before the first stated meeting of Council in May following. At the time of presenting to Council said estimates of revenue and expenses the Board shall, in addition thereto, include the amount necessary to be paid for interest on bonds in the following fiscal year, and also, when necessary, the amount required in that year for the retirement of bonds, provided that the total estimate of expenditures for the Board of Public Education in Wilmington, exclusive of the amount of bonds that may be issued as in this Act hereinafter provided, shall not exceed nine mills on each dollar of the value of real and personal property as assessed and taxable for current city revenue. The said Board, early in June in each year, after the Council shall have made appropriation for the use of the public schools for the following fiscal year as herein provided, shall make the apportionment and appropriations for their expenditures for that year, based as nearly as may be, upon the estimates made by them in April previous, and such apportionment and appropriations shall be specified and arranged under the heads or items designated in said estimates. The said Board shall have no power or authority except when specially authorized by act of the General Assembly to borrow money or contract or create any debt or liability except ordinary debts and liabilities

incurred in executing the duties imposed on them by law, to be paid out of the said appropriation made by Council and the receipts of the year for the time then current. No money shall be paid from the treasury of the Board unless the same shall have been appropriated as aforesaid."

"Section 11. The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided, that the amount to be raised by taxation for school expenses in any one year including all the expenses which the Board of Education is authorized to incur under the provisions of this Act, and including expenses for maintenance, operation, interest on bonded debt, and retirement of bonds falling due, shall not exceed seven mills on each one dollar of the value of real and personal property as assessed and taxable for city purposes. The amount collected for school purposes shall be paid into the city treasury as other taxes are paid. At the time of making the annual appropriation for public use, the Council shall also make an appropriation for school expenses equal in amount to the estimate of revenues and expenses laid before said Council under the provisions of Section 7 of this Act, being Section 9 of the Act as amended, provided, that the sums so appropriated shall not exceed seven mills on each one dollar of the assessed value of city property as assessed and taxable for city purposes."

I am unable to find any changes of a substantial nature in Section 9, as amended, and certainly not insofar as the question of authority to determine the amount to be raised for school purposes is concerned.

Section 11, however, has been changed again. The first sentence is substantially the same as before. In the third

sentence I find that the policy insofar as the authority is concerned has been expressly taken from the Board and Council acting together, as it appeared under Section 11 of the Act of 1915, and placed back in the Board alone, as it originally appeared under Section 11 of the Act of 1905.

My conclusion under these amendments is the same as previously stated in relation to the original Act of 1905. The express provision under sentence 3 of Section 11, "at the time of making the annual appropriation for public use, the Council shall also make an appropriation for school expenses equal in amount to the estimate of revenues and expenses laid before said Council * * *," is determinative of the question of authority.

The authority thus conferred remained in the Board until May 4, 1927, at which time the Legislature amended the 1905 school law by enacting Chapter 87, Volume 35, Laws of Delaware. Under this amendment Sections 9 and 11 were amended to read as follows:

"* * *. The Board shall, during the month of April in each year, cause to be prepared and laid before them estimates of their probable revenue and expenses for the ensuing fiscal year, which estimates they shall lay before The Council on or before the first stated meeting of Council in May following. At the time of presenting to Council said estimates of revenue and expenses, the Board shall in addition thereto include the amount necessary to be paid for interest on bonds in the following fiscal year, and also, when necessary, the amount required in that year for the retirement of bonds. The said Board, early in June in each year, after The Council shall have made appropriation for the use of the public schools for the following fiscal year as herein provided, shall make the apportionment and appropriations for their expenditures for that year, based as nearly as may be, upon the estimates made by them in

April previous, and such apportionment and appropriations shall be specified and arranged under the heads or items designated in said estimates. The said Board shall have no power or authority except when specially authorized by act of the General Assembly to borrow money or contract or create any debt or liability except ordinary debts and liabilities incurred in executing the duties imposed on them by law, to be paid out of the said appropriation made by Council and the receipts of the year for the time then current. No money shall be paid from the treasury of the Board unless the same shall have been appropriated as aforesaid."

"Section 11. The Council shall, every year, when determining the amount necessary to be raised on the persons and estates in the City of Wilmington for public use, also include the sum necessary to be raised on the persons and estates for executing the foregoing provisions; provided that the amount to be raised by taxation for school expenses in any one year, including all the expenses which the Board of Education is authorized to incur under the provisions of this Act for the maintenance and operation of said schools, but not including interest on bonded debt and retirement of bonds falling due, shall not exceed seven mills on each one dollar of the value of real and personal property as assessed and taxable for City purposes. The amount collected for school purposes shall be paid into the city treasury as other taxes are paid."

Under this amendment Section 9 has not been changed, insofar as the question of authority to determine the amount is concerned. Section 11, however, has been radically changed. I am unable to find any material alteration, insofar as the first and second sentences are concerned, but I do find that the third sentence, "At the time of making the annual appropriation for public use, the Council shall

also make an appropriation for school expenses equal in amount to the estimate of revenues and expenses laid before said Council under the provisions of Section 7 of this Act, being Section 9 of the Act as amended, * * *" as the same appeared under Section 11 of the Act of 1921 has been omitted. Under this amendment the mandatory provision conferring the authority to determine the amount to be appropriated, as contained in the Acts of 1905, 1915, and 1921, no longer exists. Now the question is, What import is to be given to the omission of such an important sentence? My associates do not attach any particular significance to the omission of this language; yet, under the Acts of 1905, 1915, and 1921 they point to the third sentence of Section 11 as the same appears in each Act as being solely determinative of the question of authority. For instance, under the Act of 1915 they rely upon the third sentence only as establishing the authority in Council and the Board together. They assert that, since under this amendment express authority was not conferred upon Council, there exists other language contained in Sections 2, 9, and 11 of the Act, upon which they find that it is more reasonable to say that the Board rather than Council still possesses the authority to determine the amount of the appropriation.

To me such a conclusion from the language employed under Sections 2, 9, and 11 of the 1905 Act, as amended, is so strained that it falls into the field of judicial legislation. The Legislature at all times has squarely met the question of authority by an express provision under the Acts of 1905, 1915, and 1921, by stating under sentence 3 of Section 11 of each Act where the authority should rest.

The Legislature, regarding enactments, is not only charged with the knowledge of the present state of the law, but also with knowledge of any course of conduct over a period of time as evidenced by enactments pertaining

to the subject matter then at hand. I am unable to conclude that if the Legislature intended the authority to remain in the Board, as evidenced by the third sentence of Section 11 of the 1921 amendment, such intent would not have been indicated on their part by the omission of the third sentence carrying the express provision. I find the omission of this sentence to be clearly indicative of another change in policy as to the authority to determine the amount. The omission standing alone is highly significant, in that it caused to be eliminated from Section 11 the express provision under which the Legislature conferred to the Board alone the authority to determine. By reason of this omission I find Sections 2, 9, and 11 to be in complete harmony with one another. Inconsistencies heretofore pointed out in the original Act of 1905 no longer exist.

I think this legislative action is a clear indication that the Board should not have the sole authority to determine. However, regardless of my conclusion in this respect, admitting arguendo that the omission of the third sentence is not of the import that I have announced, yet its omission unquestionably eliminates the express provision that the Board alone shall determine the amount, thus necessitating a consideration of other language in the Act, as amended, in order to determine the question of authority.

What I have previously said concerning the authority to determine, with reference to Sections 2 and 9 of the original Act of 1905, will suffice, since those Sections have not been substantially changed by subsequent amendments.

Section 11 has been frequently changed, as I have indicated, but with the exception of the omission of the third sentence it is substantially the same as in the original Act of 1905. My associates say that certain language appearing in the first sentence of Section 11 of the Acts of 1921 and 1927 ("the amount to be raised by taxation for

school expenses in any one year including all the expenses which the Board of Education is authorized to incur") means the amount as set forth in the estimates filed by the Board under Section 9. On the contrary, I find this language to mean that the expenses which the Board is authorized to incur are those in connection with the carrying out of the duties imposed upon them by law, to be paid out of the appropriation made by Council.

Based upon the reasons as stated, it is my opinion that Council and not the Board has the authority to determine the amount to be appropriated for school purposes in the City of Wilmington.

## On Motion for Reargument.

HARRINGTON, Chancellor: The majority of the Court deny the motion of the City Council for a reargument.

Conceding that the holders of an unconstitutional office are not accorded the usual powers of de facto officers, with respect to the exercise of corporate rights and duties (*Norton v. Shelby County*, 118 *U. S.* 425, 6 *S. Ct.* 1121, 30 *L. Ed.* 178; *Cooley's Constit. Lim.*, 382, 383), that principle is not applicable to this case. We have already pointed out that the "Board of Public Education in Wilmington" was made a Consolidated School District and given certain appropriate corporate powers at least as early as 1905 (§ 1, Chapt. 92, Vol. 23, Laws of Del.) which were, perhaps, somewhat broadened in 1921 (Chapt. 163, Vol. 32, Laws of Del.). Each Act provided for a Board of a specified number of elected members; the 1905 Act for 13 and the 1921 Act for 7. The latter Act reduced the original number by striking out Section 1 of the 1905 Act and substituting a new section therefor, but that was the only material change in the section as the identical language, incorporating the district, was again inserted. Each of these Acts

received a two-thirds vote in the legislature and the offices or positions created thereby have never been abolished. The 1931 amendment to the 1905 Act, as amended, (Chapt. 202, Vol. 37, Laws of Del.) purported to provide for an appointive Board of six members and such a Board held office when the estimate of the sums necessary to operate the schools was made and filed with Council in the early part of this year. The validity of that action by the Board is questioned because the 1931 amendment did not purport to receive a two-thirds vote in the legislature (see § 1, Art. IX, Constit. of 1897; *Clendaniel v. Conrad*, 3 *Boyce* 549, 83 *A*. 1036, *Ann. Cas.* 1915B, 968; *State v. Burris*, 6 *Boyce* 133, 97 *A*. 387; *In re School Code of* 1919, 7 *Boyce* 406, 108 *A*. 39), but it is unnecessary to consider that contention. The right of an appointed Board to hold office under that Act may be directly questioned in some other proceeding, but so long as the members purport to exercise the duties and functions of the "Board of Public Education in Wilmington," they must be regarded as de facto officers and Council is bound to act accordingly. *Norton v. Shelby County, supra; Drob v. Nat. Memorial Park, Inc.*, 28 *Del. Ch.* 254, 41 *A*. 2d 589.

As sections 9, 10, 11 and 23 of Chapter 119, Volume 28, Laws of Delaware, were not cited at the original argument, they were not commented on in the majority opinion. They were merely intended to facilitate the collection of taxes, after a levy made, and questions as to whether they can apply to a tax assessed in or after the month of December will not prevent the issuance of the writ of mandamus.

The various provisions of the 1927 amendment to the School Law have already been considered at some length and no further comments on them seem necessary.

TERRY, J., dissents from this conclusion.