J-S69015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DERRICK WHITE | |
| Appellant | No. 1152 EDA 2015 |

Appeal from the Judgment of Sentence March 23, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012991-2010

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:       **FILED FEBRUARY 05, 2016**

Appellant, Derrick White, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for first-degree murder, retaliation against witness, conspiracy, possessing instruments of crime ("PIC"), firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. In January 2006, Abdul Taylor ("Victim") was with Nafeas Flamer and Hakim Bond at 22nd Street and Sigel Street in South Philadelphia. Mr. Flamer was waiting for Allen Moment, Jr. to return a gun he had taken from Mr. Flamer.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 4953, 903, 907(a), 6106, 6108, respectively.

As Victim walked down the street with Mr. Flamer and Mr. Bond, they were shot at from behind. Mr. Flamer later told Victim it was a set-up, and indicated a desire to seek revenge on Mr. Moment. On January 18, 2006, Victim encountered Mr. Flamer and Mr. Bond in a lot on Ellsworth Street with some other individuals, several of whom were armed. Victim heard Mr. Flamer say, "He's outta here and we going down there tonight," to which someone else responded, "We not going down there tonight. You drawing." (N.T. Trial, 2/24/12, at 84). Victim believed they were plotting to kill Mr. Moment, so he left and informed his mother of the plot. On the evening of January 20, 2006, Tyree Branch came to Victim's house and told him that Mr. Flamer and Mr. Bond were mad at Victim because he refused to "ride with them to go see [Mr. Moment.]" *Id.* at 85. Approximately one hour later, Victim heard Mr. Flamer's grandmother scream. Victim looked outside and saw Nafeas Flamer's uncle, Marvin Flamer, run and get into a car. Later that night, police responded to a radio call reporting a shooting on the 2800 block of Ellsworth Street. Police found Mr. Moment lying in the street with multiple gunshot wounds. Mr. Moment was admitted to the hospital in critical condition.

In another incident on May 21, 2007, police responded to a radio call of a person with a gun on the 2300 block of Ellsworth Street. When they arrived, they found Richard Smith lying on the ground with multiple gunshot wounds. On the way to the hospital, Mr. Smith told police he believed he

was about to die and that he was shot by Nafeas Flamer and Appellant. Mr. Smith, who survived the shooting, confirmed that Nafeas Flamer and Appellant were the shooters in a subsequent statement to the police.

Mr. Moment remained in critical condition for over two years and eventually died on August 6, 2008, from injuries he suffered in the 2006 shooting. Shortly before he died, Mr. Moment gave a statement to the police about the shooting, which led to the arrests of Nafeas Flamer, Marvin Flamer, and Hakim Bond. All three individuals were charged with first-degree murder following Mr. Moment's death.[2] Around the time that Mr. Moment died, Victim told his sister that the Flamers wanted Victim to state falsely that they were in Victim's studio on the night of Mr. Moment's shooting. Victim also told Mr. Moment's father that the Flamers and Hakim Bond had admitted killing Mr. Moment, and that they wanted Victim to provide them with a false alibi. Victim told Marvin Flamer, "No, I ain't giving you no alibi. I'm telling the truth, you know." (N.T. Trial, 2/24/12, at 60). On August 13, 2008, Victim gave a statement to the police describing his knowledge of Mr. Bond and the Flamers' plans to kill Mr. Moment. After

_____

[2] The Flamers were tried jointly and convicted of first-degree murder and related offenses. Their appeals from those judgments of sentence are currently pending before this Court. *See Commonwealth v. Flamer, M.*, No. 2681 EDA 2014; *Commonwealth v. Flamer, N.*, No. 2299 EDA 2014. Mr. Bond was tried separately and convicted of first-degree murder and related offenses. This Court affirmed his convictions on October 7, 2014, but remanded for resentencing. *See Commonwealth v. Bond*, 108 A.3d 104 (Pa.Super. 2014) (unpublished memorandum).

Victim cooperated with police, he acquired a reputation in the community as a "snitch."

While incarcerated awaiting trial for the murder of Mr. Moment, Marvin Flamer called his mother, Geneva Flamer, on September 18, 2008, and said he needed to find out what type of evidence the Commonwealth had against him. Ms. Flamer said they had "the boy" listed as living at the address of Victim's girlfriend. Marvin Flamer asked if Appellant had "gone up there" yet, and Ms. Flamer said no. Mr. Flamer then said, "Man, they bullshittin'. Like everybody sayin' they gonna do something, they don't do it." (N.T. Trial, 2/27/12, Exhibit C-32). Appellant visited Marvin and Nafeas Flamer in jail on multiple occasions. In a subsequent telephone conversation on May 6, 2010, Ms. Flamer told Marvin Flamer, "[Appellant] told me to tell you he send his love." *Id.* That same evening, Victim visited his mother, who was cooking at her home. At one point, Victim left to buy sugar for his mother. While Victim was walking back to the house, Appellant approached Victim and shot him in the head. Appellant then fled the scene. The following day, a man known as "Strong" told Marvin Flamer over the phone that Victim had been killed. Marvin Flamer responded, "Aw. Aw, hey man, that hurt man."[3] *Id.* Two days after the shooting, Ms. Flamer relayed to Marvin Flamer a

---

[3] In another phone conversation from jail, Appellant said, "And then they just record every phone call right here, like everything. And they you know what they do? They…have it on laptops, and they, I done heard, people they done, brought they stuff, conversations at they trial." *Id.*

- 4 -

conversation with an unidentified person, stating, "He just said I told you I was comin' by. Said this is your Mother's Day present. Happy Mother's Day. Have yourself a beautiful weekend. Enjoy yourself, and he said I told you that I was gonna[,] Marvin, he said." *Id.* The police apprehended Appellant, who claimed he had killed Victim in self-defense. In Appellant's confession, he said he was aware of a "rumor" that Victim had given a police interview in Mr. Bond and the Flamers' murder case.

Following the guilt phase of Appellant's trial, a jury convicted Appellant of first-degree murder, retaliation against witness, conspiracy, PIC, and VUFA. On February 29, 2012, at the conclusion of the penalty phase, the jury returned a verdict of death for the offense of first-degree murder. The court immediately sentenced Appellant to death in accordance with the verdict and imposed no further penalty for the remaining offenses. Appellant filed an appeal with the Pennsylvania Supreme Court. The Court entered an order on July 2, 2013, which granted in part Appellant's petition for remand for the trial court to determine whether penalty phase counsel was ineffective. On remand, the trial court granted Appellant a new penalty phase hearing. Following that hearing, the court quashed the sole aggravating circumstance and sentenced Appellant, on March 23, 2015, to life imprisonment without parole for the murder conviction. The court sentenced Appellant to consecutive terms of three (3) to six (6) years' incarceration for retaliation against witness, and three-and-a-half (3½) to

seven (7) years' incarceration for the VUFA convictions. The court also imposed concurrent terms of eight (8) to sixteen (16) years' incarceration for conspiracy, and one (1) to two (2) years' incarceration for PIC. Appellant filed a timely post-sentence motion on March 30, 2015, which the court denied that same day. On April 20, 2015, Appellant filed a timely notice of appeal. The court did not order Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant filed none.

Appellant raises the following issues for our review:

> WHETHER…APPELLANT IS ENTITLED TO AN ARREST OF JUDGMENT ON THE CHARGE OF MURDER IN THE FIRST DEGREE AND ALL RELATED CHARGES WHERE THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN THE VERDICT.
>
> WHETHER…APPELLANT IS ENTITLED TO A NEW TRIAL ON THE CHARGE OF MURDER IN THE FIRST DEGREE AND ALL RELATED CHARGES WHERE THE VERDICT IS NOT SUPPORTED BY THE GREATER WEIGHT OF THE EVIDENCE AND WHERE THE JURY HAD TO RELY UPON SPECULATION, CONJECTURE AND SURMISE.
>
> WHETHER…APPELLANT IS ENTITLED TO A NEW TRIAL AS A RESULT OF TRIAL COURT ERROR WHERE THE COURT FAILED TO CHARGE ON THE LAW OF SELF-DEFENSE EVEN THOUGH THE FACTS OF THE CASE COULD HAVE BEEN TAKEN BY A JURY TO ESTABLISH THAT…APPELLANT ACTED REASONABLY IN FEAR OF HIS LIFE OR SERIOUS BODILY INJURY AND WHERE [VICTIM] WAS THE AGGRESSOR, OR IN THE ALTERNATIVE,… APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE COURT FAILED TO CHARGE ON VOLUNTARY MANSLAUGHTER WHERE IMPERFECT SELF-DEFENSE OR UNREASONABLE BELIEF SELF-DEFENSE COULD HAVE BEEN FOUND BY THE JURY FROM THE EVIDENCE PRESENTED AT TRIAL.

WHETHER…APPELLANT IS ENTITLED TO A NEW TRIAL AS A RESULT OF TRIAL COURT ERROR WHERE THE COURT PERMITTED THE COMMONWEALTH TO INTRODUCE A 75-48, *I.E.*, AN ABBREVIATED POLICE REPORT OF ONE RICHARD SMITH TO DETECTIVE HOGUE, THAT IMPLICATED…APPELLANT IN A PRIOR SHOOTING AS AN ACCOMPLICE OF NAFEAS FLAMER, AGAINST WHOM [VICTIM] WAS A WITNESS.

(Appellant's Brief at 6).

In issues one and two, Appellant argues that in his police confession and trial testimony, he consistently and credibly stated he shot Victim out of fear when Victim confronted Appellant on the street. Appellant claims no evidence contradicts his assertion that he acted out of fear. Appellant contends he was aware of Victim's violent criminal history at the time, and Victim had threatened him in the past. Appellant asserts he saw Victim carrying "something" in his hand, which turned out to be a bag of sugar. Appellant avers he shot Victim only once, which is inconsistent with the finding that Appellant had the requisite specific intent to kill Victim. Appellant claims the Commonwealth's theory—that Appellant intentionally killed Victim as part of a conspiracy with the Flamers and Hakim Bond—was entirely speculative. Appellant concludes the evidence was insufficient to sustain his conviction for first-degree murder and conspiracy. Appellant likewise concludes his conviction for first-degree murder was against the weight of the evidence. We disagree.

The following principles of review apply to a challenge to the sufficiency of evidence:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting **Commonwealth v. Bullick**, 830 A.2d 998, 1000 (Pa.Super. 2003)).

Our standard of review for a challenge to the weight of the evidence is as follows:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial

- 8 -

court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted).

To convict a defendant of first-degree murder:

> [T]he jury must find that (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with a specific intent to kill. Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body.

***Commonwealth v. Montalvo***, 598 Pa. 263, 274, 956 A.2d 926, 932 (2008), *cert. denied*, 556 U.S. 1186, 129 S.Ct. 1989, 173 L.Ed.2d 1091 (internal citations omitted). ***See also*** 18 Pa.C.S.A. 2502(a).

> [T]o prove conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another…to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime.

***Montalvo, supra*** (internal citation omitted). ***See also*** 18 Pa.C.S.A. § 903. "While the Commonwealth is not required to prove a written or express agreement, a tacit agreement must be established by reasonable inferences arising from the facts and circumstances and not by mere suspicion or conjecture." ***Commonwealth v. Perez***, 931 A.2d 703, 708 (Pa.Super. 2007). "Circumstances like an association between alleged conspirators,

knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant when taken together in context, but individually each is insufficient to prove a conspiracy." *Id.*

Instantly, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence established the following: Marvin Flamer, Nafeas Flamer, and Hakim Bond plotted and executed a revenge killing of Mr. Moment. The Flamers were upset that Victim refused to participate in the murder. After the shooting, Marvin Flamer tried to convince Victim to provide the Flamers and Mr. Bond with a false alibi; but Victim refused. Victim insisted he would tell the truth. While incarcerated awaiting trial, Marvin Flamer sought to discover the extent of the Commonwealth's evidence against him. In a recorded telephone conversation, Geneva Flamer implied the police had obtained information from Victim. Victim acquired a reputation in the community as a "snitch." Marvin Flamer expressed frustration that Appellant had not "gone up" to see Victim yet. Appellant visited Marvin and Nafeas Flamer in jail multiple times. On the day Victim was killed, Ms. Flamer told Marvin Flamer that Appellant "send[s] his love." Hours later, Appellant confronted Victim on the street as Victim was walking to his mother's house with a bag of sugar, shot Victim in the forehead, and fled. Victim was unarmed. Two days later, Ms. Flamer relayed to Marvin Flamer a message from an unidentified person, who said, "I told you I was

comin' by," "I told you that I was gonna [do it]," and "[T]his is your Mother's Day present."  Appellant confessed to the killing, and his confession was corroborated by forensic evidence.  Appellant also admitted he knew Victim had talked to the police regarding the murder of Mr. Moment.  Based on the foregoing, the Commonwealth produced sufficient evidence that Appellant intentionally killed Victim as part of a conspiracy to eliminate him as a witness in the Flamers' murder trial.  *See Montalvo, supra*; *Jones, supra*.

With respect to Appellant's challenge to the weight of the evidence, the jury was free to reject his testimony that he had no intention to kill Victim and simply reacted out of fear.  Victim was unarmed when Appellant shot him in the forehead and fled.  The Commonwealth's evidence showed Appellant had a specific intent to kill Victim based on the nature of the shooting, the Flamers' anger at Victim's refusal to participate in the execution or cover-up of Mr. Moment's murder, Marvin Flamer's desire to use Appellant to eliminate Victim as a witness, Appellant's visits and messages to the Flamers in jail, and Appellant's previous deadly association with Nafeas Flamer.  Therefore, the trial court acted within its discretion when it determined Appellant's conviction for first-degree murder was not against the weight of the evidence.[4]  *See Champney, supra*.

_____

[4] Appellant makes no weight or sufficiency challenges to any other conviction despite his references to "all related charges" in his statement of questions involved.  Therefore, any challenge to Appellant's other convictions is waived

*(Footnote Continued Next Page)*

- 11 -

In his third issue, Appellant argues he shot Victim in self-defense. Appellant asserts his self-defense claim was supported by his trial testimony and statement to police, which sought to establish: Appellant knew Victim had a violent criminal history and liked to fight; Victim had physically threatened Appellant on prior occasions; Victim was following Appellant prior to the shooting, and Appellant slowed to allow Victim to pass by; Victim turned around; Appellant saw something in Victim's hand and did not know what it was. Appellant contends this evidence warranted jury instructions on self-defense and "imperfect self-defense" voluntary manslaughter. Appellant concedes he failed to request an instruction on voluntary manslaughter but claims the court had a duty to issue it *sua sponte*. Appellant concludes he is entitled to a new trial based on the court's failure to charge the jury on self-defense and voluntary manslaughter. We disagree.

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. Baker**, 24 A.3d 1006, 1022 (Pa.Super. 2011) (quoting **Commonwealth v. Galvin**, 603 Pa. 625, 651, 985 A.2d 783, 798-99

*(Footnote Continued)* ───────────────

as undeveloped. **See Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1262 (Pa.Super. 2014), *appeal denied*, ___ Pa. ___, 104 A.3d 1 (2014) (stating: "The Pennsylvania Rules of Appellate Procedure require that each question an appellant raises be supported by discussion and analysis of pertinent authority, and failure to do so constitutes waiver of the claim").

(2009)). "The trial court has broad discretion in formulating jury instructions, as long as the law is presented to the jury in a clear, adequate, and accurate manner." ***Commonwealth v. Lukowich***, 875 A.2d 1169, 1174 (Pa.Super. 2005), *appeal denied*, 584 Pa. 706, 885 A.2d 41 (2005).

> The law is well settled that a trial court is not obligated to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is requested and the evidence presented at trial. However, a defendant is entitled to an instruction on any recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor.

***Commonwealth v. Bohonyi***, 900 A.2d 877, 883 (Pa.Super. 2006), *appeal denied*, 591 Pa. 679, 917 A.2d 312 (2007) (citation omitted).

Pennsylvania Rule of Criminal Procedure 647 provides in relevant part:

> **Rule 647.  Request for Instructions, Charge to the Jury, and Preliminary Instructions**
>
> *    *    *
>
> (B) Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.
>
> (C) **No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.** All such objections shall be made beyond

the hearing of the jury.

Pa.R.Crim.P. 647(B)-(C) (emphasis added).  ***See also Commonwealth v. Pressley***, 584 Pa. 624, 629-30, 887 A.2d 220, 223 (2005) (stating Rule 647 requires specific objection to omission from jury charge to preserve issue for appellate review).

The Pennsylvania Crimes Code governs self-defense in relevant part as follows:

**§ 505.  Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.—**The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.—**

\* \* \*

(2)  The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i)  the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii)  the actor knows that he can avoid the necessity of using such force with complete safety by retreating…

\* \* \*

18 Pa.C.S.A. § 505(a), (b).[5]

The justified use of deadly force requires evidence establishing three elements:

> (a) [that the defendant] **reasonably believed** that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat.

*Commonwealth v. Mouzon*, 617 Pa. 527, 531, 53 A.3d 738, 740 (2012) (citation omitted) (emphasis added).

"A defense of 'imperfect self-defense' exists where the defendant actually, but unreasonably, believed that deadly force was necessary. However, all other principles of self-defense must still be met in order to establish this defense." *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa.Super. 2012) (*en banc*), *appeal denied*, 618 Pa. 688, 57 A.2d 70 (2012) (internal citations omitted). "[Imperfect self-defense] is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life." *Commonwealth v. Serge*, 837 A.2d 1255, 1265 (Pa.Super. 2003). "A successful claim of imperfect self-defense reduces murder to voluntary manslaughter." *Truong, supra* at 599.

---

[5] Section 505 was amended, effective August 29, 2011, to add Pennsylvania's "stand your ground" law. The amendment took effect after the date of the incident (May 6, 2010). Therefore, the 2011 amendment to Section 505 does not apply to this case.

***See also*** 18 Pa.C.S.A. § 2503(b).

Instantly, Appellant testified that, at the time of the shooting, he knew Victim had a violent criminal history. Appellant said he had heard rumors that Victim had threatened Appellant in the past. In Appellant's police confession, he said he did not trust Victim because he was "slimy" and "you don't know what to expect from him." Appellant maintained he panicked and shot Victim out of fear. Nevertheless, Appellant also stated Victim did not reach for or display a gun before Appellant shot him. Appellant did not claim Victim had made any direct threatening remarks or movements whatsoever. Appellant said he saw Victim carrying "something," which turned out to be a bag of sugar. Appellant failed to present sufficient evidence for a jury to find that he reasonably believed he was in imminent danger of death or serious bodily injury and had to use deadly force to protect himself. ***See Mouzon, supra***; ***Bohonyi, supra***. Appellant had no justification for killing Victim at a moment when he posed no threat to Appellant, based merely on a belief that Victim had a general penchant for violence or had indirectly threatened Appellant in the past. Therefore, the court properly denied Appellant's request for a jury instruction on self-defense.

Additionally, Appellant concedes he failed to request a jury charge on "imperfect self-defense" voluntary manslaughter. Thus, that claim is waived. ***See*** Pa.R.Crim.P. 647(C); ***Pressley, supra***. Moreover, according

to Appellant's version of events, the only instance of aggression, real or perceived, was Appellant's act of firing a bullet at Victim's head. Nothing in Appellant's account suggested he lacked the ability to retreat with complete safety. Therefore, even if Appellant had preserved the issue, the evidence would not have supported a jury instruction on "imperfect self-defense." *See Mouzon, supra*; *Truong, supra*.

In his fourth issue, Appellant argues the admission at trial of Richard Smith's dying declaration, that Appellant and Nafeas Flamer had shot Mr. Smith, was unduly prejudicial. Appellant asserts this evidence likely diverted the jury's attention from its duty to weigh the evidence impartially or caused the jury to reach its verdict on an improper basis. Appellant contends the Commonwealth already presented ample evidence of an association between Appellant and the Flamers, so Mr. Smith's statement had limited probative value. Appellant claims the Commonwealth should not have sought to prove Appellant's association with Nafeas Flamer through inflammatory and prejudicial evidence that Appellant had been accused of a prior unrelated shooting. Appellant submits the probative value of Mr. Smith's out-of-court statement was outweighed by the danger of unfair prejudice, and the court erred when it admitted the statement into evidence. Appellant concludes this claim merits a new trial. We disagree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused

its discretion." ***Commonwealth v. Drumheller***, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting ***Commonwealth v. Stallworth***, 566 Pa. 349, 363, 781 A.2d 110, 117 (2001)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Harris***, 884 A.2d 920, 924 (Pa.Super.2005), *appeal denied,* 593 Pa. 726, 928 A.2d 1289 (2007).

> Relevance is the threshold for admissibility of evidence. ***Commonwealth v. Cook***, 597 Pa. 572, 602, 952 A.2d 594, 612 (2008). Pennsylvania Rule of Evidence 401 provides as follows:

> **Rule 401. Test for Relevant Evidence**

> Evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

> (b) the fact is of consequence in determining the action.

> Pa.R.E. 401. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." ***Drumheller, supra*** at 135, 808 A.2d at 904. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

- 18 -

needlessly presenting cumulative evidence." Pa.R.E. 403.

Pennsylvania Rule of Evidence 404(b) provides as follows:

> **Rule 404. Character Evidence; Crimes or Other Acts**
>
> \* \* \*
>
> **(b) Crimes, Wrongs or Other Acts.**
>
> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> \* \* \*

Pa.R.E. 404(b)(1)-(2).

***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*).

Instantly, Officer Paul Hogue testified that he responded to the shooting of Richard Smith on May 21, 2007, where Mr. Smith said he believed he was about to die. Mr. Smith then identified Appellant and Nafeas Flamer as the shooters. In the present case, part of the Commonwealth's theory was that Appellant was closely associated with the Flamers and performed "hits" for them. Thus, Mr. Smith's statement was highly probative of a deadly association between Appellant and Nafeas

Flamer and supported the theory that Appellant and the Flamers conspired to kill Victim. Evidence of the prior shooting undermined the defense theory that Appellant simply shot Victim out of fear, based on Victim's alleged reputation and previous threats. Unlike the shooting of Mr. Smith, much of the Commonwealth's other "association evidence," such as Appellant's visits to the Flamers in prison, did not explicitly demonstrate the nature of their association. Therefore, the court acted within its discretion when it allowed Officer Hogue to testify regarding Mr. Smith's statement.[6] **See Drumheller, supra**; **Tyson, supra**. Based on the foregoing, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2016

_____

[6] Appellant does not challenge the admissibility of Mr. Smith's out-of-court statement under the "dying declaration" exception to the general rule against hearsay. **See** Pa.R.E. 804(b)(2).